Tilghman C. J.
On the trial of this cause, it became material for the plaintiff to prove that Robert Cluggage had property in a location dated 18th April 1767 in the name of Henry Mills, on which a Burvey was made 25 th October *141 1774, by Thomas Smith esquire deceased, at that time deputy surveyor. In order to do this, he offered in evidence a certificate signed by Mr. Smith, dated 14th October 1785, purporting that Robert Cluggage had, on the 7th of August preceding, paid him 81. for surveying a tract of land, on an order in the name of Henry Mills. Mr. Smith being alive at the time of the trial, the defendant’s counsel objected to this evidence, but the objection was overruled by the court and the evidence admitted.
The general rule is, that payments made to any other person than the plaintiff in the suit, must be proved by the oath of a witness. To this rule there are exceptions, one of which is, that payments for land, made to the officers of the land office, may be proved by a receipt signed by the officer. On the same principle it has been usual to admit the receipts of deputy surveyors for their fees and the expenses of survey. The certificate of Mr. Smith does not fall precisely within this exception, because he had long ceased to be an officer before he gave the certificate. This objection I think might be got over; but what is much more material is, that it was not a receipt in the usual course of business, given at the time the money was paid, but a certificate that the money had been paid some time before. The great length of time that intervened between the performance of the service, and the payment of the money, is moreover a circumstance of importance. A paper of this kind, tended to surprise the defendant, who had a right to cross-examine Mr. Smith and ^inquire of him, whether Cluggage was the person who him to make the and why the payment of the fees was delayed, until after a dispute had arisen concerning the property of the location. The plaintiff himself appears to have been sensible that Mr. Smith’s testimony ought to have been taken on oath, because a rule was entered for taking his deposition. Under all these circumstances, it appears to me, that the certificate was not evidence. I know of no adjudged case, that has gone so far, nor of any established principle from which it may be fairly inferred, that it was admissible. My opinion on this point being in favor of a new trial, I decline giving an opinion on the other point, which arose from the conduct of the jury, in casting lots for their verdict.
Yeates J.
The first question which arises on this appeal, involves principles of great moment in the administration of justice in this republic.
Independently of all authorities on the subject, it is mani *142 fest, that the finding of a jury should be the result of their impartial and unprejudiced judgments, according to their evidence. The decision of a contested case by lot or chance must be reprobated by every honest man ; and it is obvious that every suitor has an undoubted right to have his controversy terminated by a different measure of justice. Several cases in the books show the principle that verdicts will be set aside when it appears that they have been obtained by throwing up cross and pile, Bunb. 51, hustling halfpence in a hat, 1 Barnes 320, 4to. ed. 438; Par v. Seames et al.; or by casting of lots, Comy. 525; 1 Stra. 642; 1 Neb. 811; 3Keb. 805 ; 3 Bla. Com. 376. The difficulty which here presents itself is, how shall the fact be established? Shall one or more of the jurors be permitted by their voluntary affidavits, to ascertain that they and their fellows have so grossly misbehaved themselves, and perverted the very object of their high office ?
0° fhi8 subject the English authorities (a) are very Contradictory. But it will be found, upon examination, that the more modern cases exclude the affidavit of jurymen, as the sources from which the court are to derive their knowledge of the fact, on account of the arts which might be used if a contrary rule were to prevail. The practice of the courts of justice in England was fully settled, when the motion for the new trial in this case was overruled in Huntingdon in June 1808 in the Circuit Court.
The opinions of American judges in our sister states, have greatly differed on the point in question. -I will consider them more at large with the dates of the several decisions.
In Smith v. Cheetham at New York in May 1805,3 Caines 58, Spencer and Livingston justices were of opinion, that the information of jurors should be received in order to show a fact, which might vitiate their verdict; while Kent Chief Justice asserted, that the better opinion was, that the fact must not be derived from the jurors themselves, since the court cannot take notice of it, without at the same time *143 making the jury answer for the misdemeanor. In Grinnell v. Philips, in Massachusetts in June term 1805,1 Mass. T. R. 541, Sedgwicke and Sewell justices, against the opinion of Thatcher justice, admitted one of the jury, offered as a witness by the defendant, to be sworn and examined respecting their conduct in finding the verdict. But in Cochran v. Street, in the Court of Appeals of Virginia, in the spring term of 1792 (1 Wash. 81,) Pendleton president in delivering the opinion of the court, expresses himself thus: “To meddle with the verdict of a jury, upon the evidence of some of the jurors, is a delicate business, and should be proceeded in with caution, to prevent the mischief of the jurymen being tampered with. Lord Mansfield very properly refused a new trial upon the affidavit of two of the jurors, that the cause was decided by cross and pile ; because it went not only to prove themselves guilty of misbehavior, *but also ten others of the jury.” And in Price’s ex. v. Warren, adm. of Fuqua, on the first July 1807, the judges of the same court unanimously determined, that a new trial ought not to be granted on the affidavits of two of the jurors, that they were influenced in their verdict by information given by one of their own body in the jury-room. 1 Hen. & Munf. 885.
Dana v. Tucker in the Supreme Court of New York in August 1809, 4 Johns. 487, is the last case which I have been able to find on the subject, wherein the court say, “ the better opinion is, and such is the rule adopted by the court, that the affidavits of jurors are not to be received to impeach, a verdict, but they may be admitted in exculpation of the jurors, and in support of their verdict.”
Much reliance was placed duzung this argument on Bradley’s Lessee v. Bradley, determined in this Court in January term 1792, 4 Ball. 112. But that case is z’eported erz’one ously. I was of counsel with the plaintiff on the tzüal, and the late Mr. Bradford with the defendant. Neither of us took any part in the decision of the motion for the new trial. M’Kean Chief Justice was of opinion that a new trial should be granted; but Judge Shippen thought differently. The plaintiff obtained judgment on his verdict, “the court being divided in opinion and it is thus entered on the record. I have lately examined it, and shown it to the present chief justice.
It is true that the affidavits of two of the jurors, stating that two others of the jury had affirmed certain matters of fact, which had induced them to find a verdict for the plaintiff, were read in suppoz’t of the motion; and also the depo *144 sitions of two witnesses contradicting the facts supposed to have been so affirmed; and that the affidavits of six other jurors were read, showing the grounds on which the whole twelve had formed their verdict. But it is not usual, when a motion is made for a new trial, to object to the court’s receiving evidence of the facts on which it is founded. The common course is, to lay the facts before the court, leaving it to them to judge of their legal operation. The plaintiff’s counsel in that case went fully into the conduct of the jury, as well as the merits of the two parties. They had no reason *to fear the effect of the affidavits of the two jurors, while they had more weighty evidence to repel the facts sworn to, and fully explain the conduct of the whole jury. Certain it is that nothing dropped from either of the members of the court, respecting the conduct of the jury; their difference of opinion rested on a comparison of the conflicting titles.
Amidst the variety of decisions to be found in the books upon the present question, I find myself under the necessity of forming my own opinion, whether it would conduce most to the advancement of justice, to admit or exclude the testimony of jurors touching their own misconduct, in order to vitiate their solemn verdict.
I frankly confess, that I feel the utmost repugnance to such testimony, although I am fully aware, that I thereby exclude almost the only evidence, which the case naturally admits of. But by admitting it I as readily perceive, that I should ppen a door to the exercise of the most pernicious arts, and tampering with jurors; and that the practice would be replete with dangerous consequences. Jurors,-who have been sworn or solemnly affirmed to give a verdict according to evidence, come with a bad grace into a tribunal of justice to prove their own dishonorable conduct, and affix a stigma on their companions who may be unheard in their defence. Besides, in the language of some of the cases, I cannot see how such testimony could be heard by the court, without proceeding against the jurors criminally. Should this happen, will it not justly be deemed entrapping the jurors whose affidavits have been used? And will it not expose others implicated in the charge, to the temptations naturally incident to persons in a state of accusations? We have seen in Bradley’s Lessee v. Bradley how jurors will disagree in such cases. But above all, I greatly fear that the practice if adopted, would tend to an inquisition over the consciences of jurors, as to the grounds and reasons of their verdict, and bring questions of fact more frequently before the court for their *145 decision, than is consistent with sound policy. I am opposed to penetrating into the recesses of a jury-room, through the instrumentality of jurors, who are kept together until they have agreed upon their verdict. The settled rule in New York and Virginia, as well as the most modern Euglish authorities, are adverse to the receiving of such "testimony, and I cannot discover why we should be more inattentive to the reputation and feelings of our own jurors. Upon the whole, after the fullest consideration, I am of opinion, that the testimony of jurors ought not to be admitted to invalidate their verdicts. In this case, the deposition of James B. Ross does not prove the fact, that the jury decided the cause by drawing of lots, unless it be connected with the testimony of Martin Itnire one of the jurors.
I proceed to the next ground assigned for a new trial, the admission in evidence of the certificate of Thomas Smith esquire dated 14th October 1785, stating that in August preceding, Robert Cluggage had paid him 31. for his surveying fees on an order of survey in the name of Henry Mills, bearing date 13th April 1767.
It was contended on the argument, that the reason of offering receipts for surveying fees in evidence upon titles resting on applications, was merely to show, that the party followed up his pretensions in due time, in order to repel all imputation of abandonment or laches; and that the certificate was equivalent to a receipt for the money. But in this instance, there was evidently an ulterior object. It became necessary for the lessor of the plaintiff to establish, that the application was entered for the use of Robert Cluggage his father, and to connect the improvements made on the land in question with the paper title. Whether the circumstances of the case, such as Mr. Smith calling at the house of Robert Cluggage in order to survey the lands for him under this application, his attending and conducting the survey—his bestowing labor on the land as well before as after the survey—and the non-assertion of claim to the lands by Mills, might warrant, the jury to infer, that he was the cestui que use of the application, I cautiously abstain from deciding upon, nor will I anticipate the event of another trial. It occurred to me dui’ing the argument, that the present question might possibly bear some analogy to the declarations of a person in the possession of lands, that he held the same as tenant of I. S. which have been ruled to be good evidence. 12 Vin. 118, pi. 10; Espin. 490; 1 Johns. 343. But I am satisfied on reflection that the cases are wholly dissimilar. A tenant in conversation explain his situation with re *146 spect to two persons who claim to be his landlords, and his ^conduct as tenant to either. But this relaxation the general rule of law as to hearsay evidence, is bottomed on the relation that subsists between landlord and tenant, the latter being in the peaceable possession of the premises. No such relation existed here, nor any other matter which could form an exception to the settled principle. There would have been better grounds for admitting the certificate in evidence, if an acknowledgment of the debt arising from the act of surveying could have been shown corresponding in some degree with the time of the services performed. But no such proof was given. The survey was made in October 1774, and the surveying fees were not paid until August 1785, nearly eleven years afterwards.
As things appeared on the trial, the written acknowledgment of a person formerly in office, was read, to establish an independent fact, without oath or affirmation, and without an opportunity of cross-examination, in a manner unknown to the law. All mankind are graduated on the same scale, when the competency of testimony is decided on. It is of no moment as to the present inquiry, how truly respectable the character of our late brother Judge Smith stood in his diftferent relations in life, nor that he was formerly a deputy surveyor in the highest reputation.
I am of opinion, that the admission of his certificate in evidence was erroneous, that the judgment of the Circuit Court be reversed, that a new trial be awarded, and that the costs await the event of the suit.
Brackbnridge J. gave no opinion, the appeal being from his decision.
Judgment reversed, and New Trial awarded.
[Cited in 4 S. & R. 299 ; 6 id. 207 ; 4 R. 240 ; 3 W. 73. Approved in 5 R. 62. Commented on and distinguished in 7 S. & R. 458. See also 24 S. 310.]

 The following cases admit the evidence of jurors on the point of their misconduct: Metcalf v. Deane, Cro. El. 189 ; 32 El. admitted to be good law; Vicarey v. Farthing, 38 El. Moore 452; Heyler v. Hall, Palm. 325; S. C., 2 Rol. Rep. 261; 20 Jac. ; Par v. Seames et al., 1 Barnes 320, 4to. ed. 438 ; 8 Geo. 2, Philips v. Fowler, Comy. 525 ; S. C. Pract. Reg, C. B. 409; Bull. 325-6; 1 Barnes 325, 4to. ed. 441; East. 8 Geo. 2; Aylett v. Jewell, 2 Bl. Rep. 1299, 19 Geo. 3.
Contra. Prior v. Powers, 1 Keb. 811 ; 16 Car. 2, Palmer v. Croule; Ander. 382, 12 Geo. 2; Vaise v. Delaval, 1 T. R. 11, 1785; Jackson v. Williamson et al., 2 T. R. 281, 1788; Owen et al. v. Warburton, 4 Bos. & Pul. 326, the point settled, 1805.