THE STATE OF CONNECTICUT *against* FREEMAN.

A juror is an inadmissible witness to prove the misconduct of his fellow jurors, for the purpose of impeaching their verdict.

This was an indictment against *Charles Freeman*, for an attempt to commit a rape on the body of *Eliza Brown ;* tried at *New-London, October* term, 1823, before *Peters, J.*

After a verdict of *guilty*, found by the jury, and accepted by the court, the prisoner moved for a new trial, stating, as the ground of his motion, That after the cause was committed to the jury, and before they had agreed upon a verdict, being in private consultation, *Samuel C. Selden,* one of the jurors, after expressing his opinion against the innocence of the prisoner, openly declared to his brethren of the jury, that the prisoner had, before that time, been convicted of a like crime, perpetrated upon the body of the mother of *Eliza Brown,* and had been punished in new-gate for it ; whereas no evidence of such fact had been given to the jury in court. In support of this statement, sundry persons of the jury, other than *Selden,* presented themselves to the court, and, of their own free will, of-

*New-London,*
July,
1824.

State
*v.*
Freeman.

fered to testify, under oath; and by their testimony, they would have established the truth of the facts stated; but the court would not permit them to disclose such facts. The prisoner, complaining of this decision as erroneous, prayed the court to reserve the question for the consideration of the supreme court of errors; which was accordingly done.

*C. Perkins,* for the prisoner, contended, That jurors, not implicated, may be permitted to disclose transactions among themselves, which destroy their verdict. It is of great importance to the due administration of justice, that the transactions of the jury-room should be pure. It would be going very far to say, that the court will receive every thing in the form of a verdict, and refuse to enquire how it was produced. How, then, are such transactions as ought to destroy the verdict, to be proved? Why is not the universal rule, requiring the best evidence the nature of the case admits of, in the party's power, applicable to this question? In what other way than by the testimony of the jurors themselves, can the transactions of the jury-room be enquired into? If the subject of enquiry be proper, which will hardly be denied, what legal objection is there to the witnesses? They have no want of understanding; nor defect of religious principle; they have not been convicted of an infamous crime; they have no private interest; no professional confidence has been reposed in them; their evidence would not declare their own infamy, nor expose them to a criminal charge, nor subject them to a penalty, or to a civil action; and finally, they have not been *compelled* to testify at all.

If this is to be an exception to all the known rules of evidence, it must be because morality or public policy requires it; or because a course of judicial decisions renders it imperative. There is, evidently, no immorality in disclosing the misconduct of jurors, any more than that of other men. Is public policy, which keeps so watchful an eye upon the conduct of jurors every where else, regardless of what they do in the jury-room? Judicial decisions recognize no such exception, the authorities and the practice being the other way. *Phillips* v. *Fowler, Barnes* 441. S. C. *Comyns' Rep.* 525. *Metcalfe* v. *Deane, Cro. Eliz.* 189. *Bul. N. P.* 326, 7. *Parr* v. *Seames* & al. *Barnes* 438. *Tallmadge* v. *Northrop,* 1 *Root* 522. *Howard* v. *Cobb,* 3 *Day* 310. *The United States* v. *Fries,* 3 *Dall.* 517. *Smith* v. *Cheetham,* 3 *Caines* 57, 8, 9. *Bradley's* lessee v. *Bradley,* 4 *Dall.* 112.

State
v.
Freeman.

The cases, in which the testimony of the jurors called as witnesses, was not received, are those in which such jurors were *themselves implicated* in the transaction. This was the fact in *Vaise* v. *Delaval*, 1 *Term Rep.* 11. *Owen* & al. v. *Warburton*, 1 *New Rep.* 326. *Dana* v. *Tucker*, 4 *Johns. Rep.* 487. Lessee of *Cluggage* v. *Swan*, 4 *Binn.* 150. In some of the cases, the jurors called as witnesses declined giving their testimony, on the ground that it would subject them to a criminal charge; and the decision went no further than that they should not be *compelled* to give such testimony. In *Prior* v. *Powers*, 3 *Keb.* 811. a new trial was denied, because the matter appeared *only by pumping the juryman to swear against himself*.

*Gurley*, contra, insisted, That whatever fluctuations there may have been formerly in the decisions on this subject, it is now settled, on principles of the soundest policy, that a juror shall not be admitted as a witness to impeach a verdict to which he has given his assent, on the ground of misconduct in the jury; and that neither his willingness to testify, nor his innocence with respect to the misconduct sought to be proved, makes any difference in the case. In support of this position, the following cases were cited and relied on. *Apthorp* v. *Backus*, *Kirb.* 416. *Howard* v. *Cobb*, 3 *Day* 310. *Dana* v, *Tucker*, 4 *Johns. Rep.* 387. *Vaise* v *Delaval*, 1 *Term Rep.* 11. *Owen* & al. v. *Warburton*, 1 *New Rep.* 326.

HOSMER, Ch. J. The question to be decided, is, whether the testimony of a juror is admissible, to show, that another juror in the jury-room gave material information concerning facts not in evidence.

There is no harmony on this subject among the *English* cases; but the most modern determinations have adjudged such testimony to be inadmissible. In *Vaise* v. *Delaval*, 1 *Term Rep.* 11. the offered evidence of a juror, to prove the deciding by lot, in the jury-room, was rejected; and in the case of *Owen* & al. v. *Warburton*, 1 *New Rep.* 326. 329. it was determined, *in conformity with the opinion of all the English judges*, that the affidavit of a juror, stating a similar fact, could not be received. In delivering the opinion of the court, it was said, by Sir *James Mansfield:* "It is singular indeed, that almost the only evidence of which the case admits, should be shut out; but considering the arts, which might be used, if a contrary rule were to prevail, we think it necessary to exclude such evidence.

If it were understood to be the law, that a juryman might set aside a verdict, by such evidence, it might sometimes happen, that a juryman, being a friend of one of the parties, and not being able to bring over his companions to his opinion, might propose a decision by lot, with a view, afterwards, to set aside the verdict, by his own affidavit, if the decision should be against him."

New-London, July, 1824.

State v. Freeman.

In the State of *Massachusetts*, in *Grinnell* v. *Philips*, 1 *Mass. Rep.* 530. the point has been raised; and, with little discussion, two judges against one, admitted the testimony of a juror to the misconduct of his associates.

The latest decision I have seen in the state of *New-York*, was in *Dana* v. *Tucker*, 4 *Johns. Rep.* 487.; and in this case the court determined, " that the better opinion is, and such is the rule adopted by this court, that the affidavits of jurors are not to be received to impeach a verdict; but they may be admitted in exculpation of the jurors, and in support of the verdict."

In Lessee of *Cluggage* v. *Swan*, 4 *Binn*. 150. *Yeates*, J., the only judge who expressed an opinion on the point, was decidedly of opinion, that such testimony was inadmissible.

The rule in *Virginia* is to the same effect. *Cochran* v. *Street*, 1 *Wash. Rep.* 79. 81. *Price's* exr. v. *Warren*, admr. of *Fuqua*, 1 *Hen. & Mun.* 385.

In this state, it has been the practice to admit such testimony; but said Ch. J. *Swift*, (1 *Dig.* 775.) "In *England*, and in the courts of the *United States*, jurors are not permitted to be witnesses respecting the misconduct of the jury; for it is a great misdemeanor; and this is most unquestionably the correct principle; for otherwise, a juror, who should be disposed to set aside a verdict, would give information to the party for that purpose; if not so disposed, he could suppress the information; and, in that way, any of the jury could command the verdict."

The question before us regards a point of *practice*; and as this cannot have any consequences antecedent to this case, it is competent for the court to decide, unshackled by precedent, and change the rule, if justice requires it. *Robinson* v. *Bland*, 1 *Wm. Black. Rep.* 264.

If the question depended merely on equitable grounds, as relative to the immediate parties to the suit, the testimony in question, perhaps, ought to be received. But there are higher considerations to be resorted to. On a principle of policy, to give stability to the verdicts of jurors, and preserve the purity

*New-London,*
July,
1824.

State
*v.*
Freeman.

of trials by jury, the evidence ought not to be admitted. The reasons assigned by Sir *James Mansfield,* in *Owen* v. *Warburton,* and by Ch. J. *Swift,* in his digest, are of great weight. The sanctioning of the testimony of one juror, relative to the misbehaviour of the rest, would open a door to the exercise of the most pernicious arts, and hold before the friends of one of the parties, the most dangerous temptation. By this capacity of penetrating into the secrets of the jury-room, an inquisition over the jury, inconsistent with sound policy, as to the manner of their conduct, and even as to the grounds and reasons of their opinions, might ultimately be established, to the injury and dishonour of this mode of trial ; imperfect, undoubtedly, but the best that can be devised. And under the guise of producing equity, there might be generated iniquity, in the conduct of jurors, more to be deplored, than the aberration from law, which, undoubtedly, sometimes takes place.

The opinion of almost the whole legal world is adverse to the reception of the testimony in question ; and, in my opinion, on invincible foundations.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial not to be granted.