## CONSOLIDATED RENDERING CO. v. NEW HAVEN HOTEL CO.

(District Court, D. Connecticut. June-19, 1924.)

No. 2432.

**Trial ⬲344—Correction of verdict; affidavits of jurors inadmissible.**

Affidavits of jurors are inadmissible in support of a motion to correct their verdict on the ground that they acted under a misapprehension of the law as to the disposition which would be made of the proceeds of the judgment.

At Law. Action by the Consolidated Rendering Company and Carrie M. Williams against the New Haven Hotel Company. On motion of Carrie M. Williams, individually and as administratrix, to correct the verdict. Denied.

John H. Cassidy, of Waterbury, Conn., for Carrie M. Williams.
William B. Gumbart, of New Haven, Conn., for Consolidated Rendering Co.
Edmund Zacher, of New Haven, Conn., for New Haven Hotel Co.

THOMAS, District Judge. In an action by the Consolidated Rendering Company and Carrie M. Williams, as administratrix of the estate of her deceased husband, against the New Haven Hotel Company, for the negligence of the defendant, the jury returned a verdict for the plaintiffs to recover $6,000, which verdict was duly recorded. A motion made by the defendant to set aside the verdict on various grounds was denied in open court. At the conclusion of the trial the jury separated. Very shortly thereafter counsel for Carrie M. Williams, one of the plaintiffs, presented affidavits obtained from all of the jurors alleging that the verdict of $6,000 had been rendered—

"under the impression and opinion that the amount of our verdict, to wit, $6,000, would be paid to Carrie M. Williams only, and would not be shared in by the Consolidated Rendering Company. Had we known that the amount of our verdict would be shared in by the Consolidated Rendering Company, and that the amount of the compensation commissioner's award would be first paid to it, and the balance paid to Carrie M. Williams, our verdict would have been for $10,000, because we consider that the value of the life of said Howard B. Williams was worth at least $10,000."

⬲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Upon the strength of the jury's affidavit, counsel for the administratrix filed a motion "to correct the verdict" and to increase the same from $6,000 to $10,000. The question to be decided on this motion is whether the affidavit of the jurors may be received in evidence by the court in support of the allegations which it contains as a basis for granting the motion. If it is inadmissible, the motion must be denied.

At the outset, counsel for defendant contend that the affidavit must be excluded on the ground that the evidence of the jurors themselves is inadmissible to impeach their own verdict. But the petitioner insists that there is ample authority empowering the court to receive the evidence and make the correction, and claims that the cases cited in both federal and state court decisions support her contention. The question presented is an interesting one, and while it has never been presented in this court, there is ample authority—in fact, the great weight of authority holds—that such affidavits or evidence must be excluded from consideration, and without the evidence it follows that the motion fails.

The case frequently cited and held to be the leading case is Owen v. Warburton, 4 B. & P. 326. In that case there was an application for a new trial upon the ground of misconduct of the jury. Evidence was proffered to the effect that the jury, being unable to agree after having been engaged in deliberation for several hours, proposed to draw lots. Two pencils were produced, of different lengths, and it was agreed that if the longer pencil was drawn the verdict should be for the plaintiff, and if the shorter one was drawn, the verdict should be for the defendant. The longer pencil was drawn, and the jury rendered a verdict in favor of the plaintiff. The lower court granted a new trial upon affidavits of the jurors setting forth the facts. This was reversed by the appellate court with the following observations:

"The affidavit of a juryman cannot be received. It is singular, indeed, that almost the only evidence of which the case admits should be shut out; but, considering the arts which might be used if a contrary rule were to prevail, we think it necessary to exclude such evidence. If it were understood to be the law that a juryman might set aside a verdict by such evidence, it might sometimes happen that a juryman, being a friend to one of the parties, and not being able to bring over his companions to his opinion, might propose a decision by lot, with a view afterwards to set aside the verdict by his own affidavit, if the decision should be against him. We are therefore of opinion that there is no ground to support this rule."

It cannot be said that strict application of this rule has met with universal approval, and some states have passed statutes whereby, under certain conditions, the action of a jury may be made the subject of inquiry; but the evil of interfering or tampering with the jury's verdict, after it has been rendered and assented to by the express or implied acquiescence of the panel, is obvious. In some cases the failure to accept such evidence might work a hardship, but the law deals, not with cases which might work an individual hardship, but with considerations of a public policy which chooses the lesser of two evils.

Prior to the decision in the Owen Case, supra, and the decision by Lord Mansfield in Vaise v. Delaval, 1 T. R. 11, in which two jurors' affidavits respecting a decision based upon chance were rejected, a

juror's testimony was sometimes received, though always with great caution. In the Vaise Case Lord Mansfield said:

"The court cannot receive such an affidavit from any of the jurymen themselves, in all of whom such conduct is a very high misdemeanor; but in every such case the court must derive their knowledge from some other source, such as from some person having seen the transaction through a window, or by some such other means."

This latter case established a rule, which soon prevailed in England and received the sanction of the courts throughout this country. The rule itself also is not without its fault, because the question immediately arises, if, in a case where a verdict is arrived at by lot or any other misconduct of a juror, and the testimony of the jurors is not to be received, who then can prove the facts? It is well known that it is improper for any one to listen to or eavesdrop upon the jury's deliberations, and hence the rule has been sometimes criticized. It has even been suggested that such a rule tempts parties to the litigation to induce the bailiffs to resort to tricky expedients and stealthy eavesdropping.

In Straker v. Graham, 4 M. & W. 721, following Lord Mansfield's ruling, three justices made the following observations:

"The affidavit of the juryman himself is rejected, because the conduct which he admits is such as would render him liable to punishment."

"No; it is because otherwise no verdict would be safe."

"When the jury have openly concurred in a verdict in open court, which ought to be their binding decision on the case, it would be most dangerous, and lead to the greatest fraud and abuse, to set it aside on such statements as that which is made in this case."

Again the English rule was stated in Cluggage v. Swan, 4 Binn. 150, 157. Said the court:

"But, above all, I greatly fear that the practice, if adopted, would tend to an inquisition over the consciences of jurors, as to the grounds and reasons of their verdict, and bring questions of fact more frequently before the court for their decision than is consistent with sound policy. I am opposed to penetrating into the recesses of a jury room, through the instrumentality of jurors, who are kept together until they have agreed upon their verdict."

A distinction has arisen in the consideration of cases in which the verdict of a jury is sought to be corrected between those cases which present a situation where there has been a misapprehension as to the law, error in computation, irregular or illegal methods, or a misunderstanding as to how the proceeds are to be divided, as in the case at bar, and those cases which show that there has been a clerical error in recording the verdict, or that the verdict announced or recorded is not the real verdict which the jury actually agreed upon. In the former class the evidence of the jurors is invariably excluded. In the latter class the correction is made.

Consequently the cases hold that it is neither safe nor wise to inquire into the various motives or arguments which led up to the jury's verdict, as to do so might result in misrepresentation after the disclosure of the verdict, and render impossible an end to trials, if the reasons for the verdict were allowed to bring about its change. The gen-

eral rule is well stated by Chief Justice Shaw in Murdock v. Sumner, 22 Pick. 156, at page 157, in the following way:

"And the general rule is that affidavits of jurors will not be received to prove any mistake of the evidence or misapprehension of the law, on the part of the jury. Different jurors, according to their different degrees of intelligence, of attention, and habits of thought, may entertain different views of the evidence, and of the instructions of the court in point of law. But the verdict, in which they all concur, must be the best evidence of their belief, both as to the fact and the law, and therefore must be taken to be conclusive. Jackson v. Williamson, 2 T. R. 281; Owen v. Warburton, 4 Bos. & Pul. 326; Ex parte Caykendoll, 6 Cowen, 53; Napier v. Daniel, 3 Bingh. New Cases, 77. The rule is founded upon a consideration of the great danger, practically, of listening to suggestions of misapprehension and mistake in the juries."

Accordingly to-day it is universally held that a verdict cannot be affected, either favorably or unfavorably, by the following circumstances: That one or more of the jurors misunderstood the court's instructions; or were influenced by an illegal paper, or by an improper remark of a fellow juror; or assented because of weariness, or illness, or importunities; or assented under an erroneous belief that the judge would use clemency, or had the legal right to vary the sentence; or had been influenced by inadmissible evidence; or had omitted to consider important evidence or issues, etc. See 5 Wigmore on Evidence, p. 109.

It has been frequently held that the law in this country follows almost universally the rule laid down by Lord Mansfield, supra. A well-considered opinion by the Supreme Court of Iowa, Wright v. Illinois & Mississippi Telegraph Co., 20 Iowa, 195, goes into the subject at great length. There it was held that the affidavits of jurors may be received for the purpose of avoiding a verdict to show any matter occurring during the trial, or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or the merits of the case out of court and in the presence of jurors; that the verdict was determined by aggregation and average, or lot, or by chance, or other artifice or improper manner. But the court, even in that case, undoubtedly would have excluded the affidavits presented in the instant case upon the reasoning therein advanced, for it said (page 210):

"But that such affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict, that he misunderstood the instructions of the court, the statements of the witnesses, or the pleadings in the case, that he was unduly influenced by the statements or otherwise of his fellow jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast. * * * While every verdict necessarily involves the pleadings, the evidence, the instructions, the deliberation, conversations, debates, and judgments of the jurors themselves, and the effect or influence of any of these upon the juror's mind, must rest in his own breast, and he is and ought to be concluded thereon by his solemn assent to and rendition of the verdict."

In admitting the evidence of a verdict reached by lot the well-considered and much-discussed opinion of the Supreme Court of Iowa has gone further than most of the prevailing cases in this country.

In Peters v. Fogarty, 55 N. J. Law, 386, 26 Atl. 855, cited by the petitioner in support of her claim, the court admitted evidence of inad-

vertence, and held that the object of the petition was to show what verdict was actually rendered and that for such purpose only the affidavit of the jurors was admissible. The court took occasion in that opinion to quote from Capen v. Stoughton, 16 Gray (Mass.) 364, which is also cited and relied upon by the petitioner. If petitioner had carefully read the Capen Case, it would have been found that the universal rule is there stated by Chief Justice Bigelow, for on page 366 he said:

"It has been settled upon sound considerations of public policy that mistake of the testimony, misapprehension of the law, error in computation, irregular or illegal methods of arriving at damages, unsound reasons or improper motives, misconduct during the trial or in the jury room, *cannot* be shown by the evidence of the jurors themselves, as the ground of disturbing a verdict, duly rendered. Chadbourn v. Franklin, 5 Gray, 315, and cases there cited."

A careful and complete reading of this case is recommended, as the verdict there was corrected because of the—

"manifest mistake, of a merely formal and clerical character, which the court ought to interfere to correct, in order to prevent the rights of parties from being sacrificed by a blind adherence to a rule of evidence, *in itself highly salutary and reasonable*, but which upon *principle has no application to the* present case."

See page 368; and on page 367 the very limitations and distinctions that are universal are clearly stated in the following manner:

"But the evidence of the jurors is offered only to show a mistake, in the nature of a clerical error, which happened after the deliberations of the jury had ceased, and they had actually agreed on their verdict. The error consisted, not in making up their verdict on wrong principles, or on a mistake of facts, but in an omission to state correctly in writing the verdict to which they had, by a due and regular course of proceeding, honestly and fairly arrived."

It is thus very apparent that in that case, as well as the others cited and relied upon by petitioner, the correct rule is clearly stated, and that counsel has failed to distinguish and differentiate a case where the testimony of the jurors may be admitted to correct a verdict through clerical mistake, or where a verdict is recorded differently than as rendered, and those cases which exclude the testimony of the jurors and prevent the correction of a verdict, where it is rendered under misapprehension of the law and for various other reasons already pointed out supra. Under the former head, as shown by petitioner's authorities, if, for-instance, the jury rendered a verdict for the plaintiff, and it is recorded for the defendant, it can and should be corrected, or if the jury rendered a verdict for $2,500, and it was recorded as $3,500, such a mistake should be corrected; but where the jury rendered a verdict which is the result of their solemn deliberations, and it is delivered in court, assented to by them at the time, and recorded in court, the testimony of jurors cannot be received for the purpose of showing that they acted under a misapprehension of the law or for any reason which affects the substance of the verdict as rendered in open court. Such was, in general, the ruling in Burlingame v. Central Road of Minn. (C. C.) 23 Fed. 706, also cited and relied upon by petitioner, where Judge Wheeler, of Vermont, sitting in the Eastern district of

New York, corrected a verdict based upon an honest mistake, which, if not corrected, would prevent the finding of the jury, as it actually was, from being carried out, and held that under such cases "the correction is not an impeachment of the verdict by the jurors in any sense."

And again petitioner further stresses her claim with firm reliance upon Galligan v. Waterbury et al., 99 Conn. 256, 122 Atl. 119. Again it appears that the verdict as recorded was not the real verdict of the jury. There were two defendants. The jury returned a verdict for the plaintiff to recover $5,000 "of the defendants," which the trial court upon motion, after a hearing, corrected so as to set forth a recovery of $5,000 against one defendant only, and in favor of the other defendant. Under the universal rule now prevailing, such ruling was correct, as the action of the court resulted in nothing more or less than the correction of a mistake, so that the right verdict was recorded, and not the wrong one, just as was done in Dalrymple v. Williams et al., 63 N. Y. 361, 20 Am. Rep. 544, also cited and relied upon by petitioner. There the jury returned a verdict against two, when the verdict agreed upon was against one and in favor of the other, and the verdict was recorded and the jury separated. Afterwards, on the affidavit of all the jurors, the verdict was corrected, and the judgment entered upon it. Thus it is clear that the cases cited and relied upon by petitioner have not had the careful reading necessary to note the distinctions that the courts have drawn between cases where a verdict may be corrected by the receipt of the affidavits of the jurors, and those cases where such affidavits are excluded, and the reasons for the different action in each class of cases.

The rule in Connecticut was stated as early as 1824 in State v. Freeman, 5 Conn. 348, where the Supreme Court of Errors, speaking by Chief Justice Hosmer, in approving Sir James Mansfield in Owen v. Warburton, said on page 351:

"If the question depended merely on equitable grounds, as relative to the immediate parties to the suit, the testimony in question, perhaps, ought to be received. But there are higher considerations to be resorted to. On a principle of policy, to give stability to the verdicts of jurors, and preserve the purity of trials by jury, the evidence ought not to be admitted. The reasons assigned by Sir James Mansfield, in Owen v. Warburton, and by Chief Justice Swift, in his digest, are of great weight. The sanctioning of the testimony of one juror, relative to the misbehavior of the rest, would open a door to the exercise of the most pernicious arts, and hold before the friends of one of the parties the most dangerous temptation. By this capacity of penetrating into the secrets of the jury room, an inquisition over the jury, inconsistent with sound policy, as to the manner of their conduct, and even as to the grounds and reasons of their opinions, might ultimately be established, to the injury and dishonour of this mode of trial; imperfect, undoubtedly, but the best that can be devised. And under the guise of producing equity, there might be generated iniquity, in the conduct of jurors, more to be deplored than the aberration from law, which, undoubtedly, sometimes takes place. The opinion of almost the whole legal world is adverse to the reception of the testimony in question, and, in my opinion, on invincible foundations."

Following this decision came Meade v. Smith et al., 16 Conn. 346, decided in 1844, and it was held that, where it is sought to set aside a verdict for the mistake, irregularity, or misconduct of the jurors, those jurors, though willing to testify, are not competent witnesses to prove

such mistake, irregularity, or misconduct, and on page 355 Mr. Justice Storrs said:

"The defendant first claims, on the motion in arrest, that the court below ought to have admitted the testimony of the jurors in the case, in support of the allegations in said motion. This point was settled, on great deliberation, in State v. Freeman, 5 Conn. 348. That was a capital case, where there were the strongest motives to adopt the most liberal rule which could be tolerated. But it was adopted as a universal rule that, where it is sought to set aside a verdict for the mistake or misconduct of the jurors, those jurors are not competent witnesses to prove such mistake or misconduct."

In 1852 followed the decision in Haight et ux v. Turner, 21 Conn. 593. On page 596 Mr. Justice Waite said:

"Whatever opinions may formerly have been entertained upon the subject, the rule seems now to be fully settled, in England, in this state, and generally throughout the Union, that the testimony of a juror cannot be received for the purpose of setting aside a verdict on the ground of mistake or misconduct on the part of the jurors. Vaise v. Delaval, 1 Term R. 11; Owen v. Warburton, 1 New Rep. 326; Everett v. Youells, 4 Bar. & Adol. 681, 24 E. C. L. 141; State of Conn. v. Freeman, 5 Conn. 348; Meade v. Smith, 16 Conn. 348; People v. Columbia Common Pleas, 1 Wend. 297; Hannum v. Inhabitants of Belchertown, 19 Pick. 311. 'The danger would be infinite,' says Lord Ellenborough, 'if an affidavit could be received from a juryman, for the purpose of setting aside a verdict.' Rex v. Wooller, 2 Stark, 111, 3 E. C. L. 270. It is, however, said that the testimony was not offered to show the misconduct of the jury, but their misapprehension. Whether their conduct was the result of an intentional disregard of the instruction of the court, or a misapprehension of their duty, the rule equally applies. The admission of such evidence would have a tendency to induce unsuccessful suitors to tamper with jurors, after their verdicts had been tendered, and to prevail upon them to come forward with disclosures to set their verdicts aside. It is far better that the rule should remain uniform and settled than to suffer the consequences that would result from any relaxation."

As late as Valentine v. Pollak, 95 Conn. 556, decided in 1920, our Supreme Court of Errors again discusses the rule, and on page 558 (111. Atl. 869, 870), Mr. Chief Justice Wheeler said:

"From an early period the proceedings of the jury, petit and grand, in their deliberations and in making up their verdict, have been beyond the power of disclosure through the testimony of the jurors. Public opinion is the sanction of this rule."

The reasons impelling the rule and the public policy prevailing are nowhere better stated than by Mr. Justice Lamar in McDonald v. Pless, 238 U. S. 264. On page 267 (35 Sup. Ct. 783, 784 [59 L. Ed. 1300]) he said:

"For while by statute in a few jurisdictions, and by decisions in others, the affidavit of a juror may be received to prove the misconduct of himself and his fellows, the weight of authority is that a juror cannot impeach his own verdict. The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room. These two conflicting considerations are illustrated in the present case. If the facts were as stated in the affidavit, the jury adopted an arbitrary and unjust method in arriving at their verdict, and the defendant ought to have had relief, if the facts could have been proved by

witnesses who were competent to testify in a proceeding to set aside the verdict. But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be private deliberation, the constant subject of public investigation, to the destruction of all frankness and freedom of discussion and conference."

But counsel for petitioner insists that the case at bar presents no claim of misconduct, but one only of clear equity. Even so, it must be again pointed out that the rule is well-nigh universal that the affidavit cannot be received in evidence for the purposes for which it is offered, to wit to show a misunderstanding of the law or a misapplication of the law and the facts.

Sufficient, I trust, has been herein set forth to show conclusively that the rule cannot be relaxed in favor of this petitioner, and that this court is foreclosed of any right to interfere with the solemn finding of a jury duly rendered and delivered in court and assented to by the jurors. To rule otherwise would do violence to a uniform rule of public policy, established since early times, and open the floodgates of temptation, and possibly bring undue influence upon jurors after they have disbanded, who might be persuaded by sympathetic appeals, or even worse, to change their minds when free from the sanctity of the jury room and beyond the supervision of the court.

But a word on the merits: The affidavit alleging that, had the jury known that the amount of the verdict would be shared in by the Consolidated Rendering Company, and that the amount of the compensation commissioner's award would be first paid to the Consolidated Rendering Company, and the balance to the petitioner, the jury would, under such circumstances, have then rendered a verdict of $10,000, because they considered the value of the life of the deceased was worth at least $10,000, is not only illogical, but inconsistent. The court charged the jury respecting the rule of damages, to which no exception was taken. In considering its verdict the jury was concerned only with the question of the value of the life of the deceased, and it was immaterial how the amount to be awarded for that life was to be distributed. The jury found that value to be $6,000, and rendered its verdict accordingly. The effect of the affidavit is only to say that the value of the life lost was $6,000 if the widow gets it all, but it is $10,000 if the Consolidated Rendering Company gets part of it.

Manifestly such reasoning, on the merits of the application, is illogical and unsound. There were two plaintiffs, and irrespective of how the fund awarded should be divided, or whether there was to be any division at all, manifestly should have no weight in the consideration and determination of the only question, so far as damages was concerned, which was, in case the jury found the issues for the plaintiff respecting negligence, what was the value of the life destroyed? That value must necessarily be the same, whether one plaintiff or the other

recovered it all, or whether it was to be equally divided or distributed on any other basis. The method of distribution of the award could in no way affect the value of the life. The affidavit only shows that out of sympathy for the widow (an improper motive) the jury would have been moved to put a higher value on the life destroyed than such life was really worth.

Conscious that this memorandum is unnecessarily long, I have cited, quoted, and analyzed the cases relied upon by petitioner, as I realize that the earnestness of the argument of counsel certainly persuaded the petitioner that a great injustice to her would be perpetrated, and that the court would seem to autocratically and unjustly take away from her $4,000, which she would conscientiously believe to be her due, in case her motion is denied.

For the reasons herein given, and upon overwhelming authority, the affidavit is excluded, and it follows, therefore, that the motion must be denied; and it is so ordered.