196 So.2d 38 (1967)
Foster W. HAVERLEY, Appellant,
v.
Chester CLANN and Ada Clann, Husband and Wife, Appellees.
No. 5887.
District Court of Appeal of Florida. Second District.
January 4, 1967.
On Motion to Dismiss Appeal and Motion to Strike March 8, 1967.
*39 Gardner Beckett, of Nelson, Beckett & Nelson, Sam H. Mann, Jr., of Mann, Harrison, Mann & Rowe, St. Petersburg, Charlie Luckie, Jr., of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
E.B. Rood, Tampa, for appellees.
PIERCE, Judge.
This is an appeal from a final judgment entered upon a jury verdict rendered after trial upon a personal injury-negligence suit in favor of appellees (plaintiffs below) and against appellant (defendant below). We will hereafter refer to the parties as they were in the Court below.
On September 7, 1966, we affirmed the judgment appealed. Thereafter, defendant filed timely petition for rehearing, and upon consideration thereof and also upon more extensive consideration of the entire record before us, we are convinced that we should recede from such affirmance and should reverse the judgment appealed and remand the cause for a new trial. This change of opinion on our part is brought about by our present settled conviction that the trial Court was in fundamental error in admitting into evidence over objection the deposition of the witness LaDon Moulton, upon the showing or rather lack of it made for introduction of the deposition.
On December 31, 1961, plaintiffs Clann owned and occupied a Ford station wagon driven by the husband in a southerly direction on U.S. Highway 19 in Pasco County. Just in front of their station wagon was a Rambler sedan owned and operated by defendant Haverley going in the same southerly direction. The two lane highway runs generally north and south and at the place of the accident it curves slightly to the east. At this point on the highway, a northbound Chevrolet operated by one Loren Braley and the Rambler driven by Haverley collided. The Chevrolet continued on northward and struck head-on with the southbound Ford station wagon of plaintiffs. The Ford and the Chevrolet came to rest on the highway with the Ford facing south and the Chevrolet, to the Ford's left, facing generally to the southwest. Haverley's Rambler car, after the impact with the Chevrolet, proceeded across the highway and finally came to rest beyond the east shoulder of the highway headed in a southeasterly direction. There was no contact between the station wagon of the Clanns and the Rambler automobile of Haverley. The testimony as a whole at the trial developed an extremely close question of negligence and also proximate cause. Many other details occurring before, during, and immediately after the two successive collisions were brought out in the evidence, but the foregoing are the basic, rudimentary facts of the accident.
At the very outset of the trial, before any witness had testified, plaintiffs' counsel procured introduction into evidence of the deposition of one LaDon Moulton taken in Florida some fourteen months before trial. When the deposition was first offered in evidence there ensued a somewhat extended colloquy between the trial Judge and respective counsel, which, because of its dispositive effect on this appeal, we quote in full as taken from the record here:
MR. ROOD:
"Your Honor, as the next witness we would like to read the deposition of Mr. *40 LaDon Moulton, taken here in Florida. He is in the armed forces and is outside the State. I would like for you to tell the jury what a deposition is before it is read.
THE COURT: Yes, sir.
MR. LUCKIE: May we approach the bench, your Honor?
THE COURT: Yes, sir.
(THEREUPON, following a discussion at the bench, the jury was excused from the courtroom.)
MR. LUCKIE: Mr. Rood, had you finished with your statement to the Court about the offer of this deposition?
MR. ROOD: Yes.
MR. LUCKIE: May it please the Court, the defendant objects to the introduction of the deposition of LaDon Moulton into evidence at this time on the grounds that the plaintiff has failed to lay any predicate whatsoever for the introduction of this deposition. This is a deposition of a witness, not a party to the litigation, and under the rules of procedure the person offering a deposition of a witness must first lay a predicate to show that the deposition is admissible, and the plaintiff has wholly failed to show that this deposition is admissible at this time.
THE COURT: I believe the plaintiff's attorney stated that the witness was outside the State of Florida, did you not, Mr. Rood?

MR. ROOD: Yes. This man was inducted into the Army and my office has tried to see what camp he's in, but apparently his family is afraid he might be subpoenaed down here and they won't tell us which camp he's in. The last report she gave us was that he was in Kentucky. I've forgotten the name of the camp. But anyway he is more than a hundred miles away, your Honor, from our information.

MR. LUCKIE: May it please the Court, I think it is incumbent upon the party offering the deposition to show and to put into the record what evidence he may have as to the admissibility of the deposition before it can be admitted over objection, and this is on the basis of the cases of Driscoll versus Morris, 114 So.2d 314 
THE COURT: Mr. Rood has said that this witness is more than a hundred miles from this courtroom at this time.

MR. LUCKIE: This is a self-serving statement, your Honor. There is no evidence. He should have some correspondence or some other evidence.

THE COURT: Do you have any authority that says we must have more than the attorney's word for it?

MR. LUCKIE: Yes, sir. I'm relying 
THE COURT: He is giving that word in court and if he is not telling the truth he can be called to account for it later.

MR. LUCKIE: I'm relying on the cases of Driscoll versus Morris, [Fla.App.] 114 So.2d 314; Weber versus Berry, [Fla.App.] 133 So.2d 327, which the Court is familiar with because you were representing one of the parties in that case; Dickson versus Feiner's Organization, 155 [Fla.App., 155 So.2d 703] 
THE COURT: Do any of them say that an attorney's word that the witness is more than a hundred miles from the courtroom is insufficient, or that it must be further corroborated?

MR. LUCKIE: I think that it is insufficient, your Honor.

THE COURT: Do any of your cases say that?

MR. LUCKIE: If they don't say that as such, they say that the party must show evidence.

THE COURT: Must show, no question; but if the party attempts to show it *41 through his attorney's statement, I believe it is not only the right but the duty of the Court to accept that statement for its face value.

MR. LUCKIE: I think that the Court should inquire as to what the attorney has done in order to ascertain where the witness is.
THE COURT: He said he talked 
MR. LUCKIE: And when that was done, how long ago it was done. I think that it is incumbent upon the attorney to show what he has done in order to ascertain the whereabouts of this witness.
THE COURT: I think to that extent Mr. Luckie is right, Mr. Rood. If you will, give a little more detail as to what and when you did anything to locate this witness.
MR. ROOD: All right. And could I have the bailiff get for us 158 So.2d and 155 So.2d, which I believe indicate that 
MR. LUCKIE: Also 133, if you will, Mr. Bailiff.
MR. ROOD: Your Honor, for weeks my office has been trying to locate this witness. We would prefer to have him in court.
THE COURT: Just tell us what you did and when.
MR. ROOD: We called his mother. I don't know the exact date, your Honor. I didn't know I would be asked to do that.

THE COURT: How long ago was that, approximately?
MR. ROOD: Up until, I guess ten days ago, your Honor. And the last ten days we have not been able to even get in touch with her. All we can find out, Judge, is that he is out of the state and they wouldn't tell us where he was, so that's all I can tell you.
THE COURT: As far as I'm concerned that's sufficient.

MR. ROOD: I would like to find him. If they know where he is, I would like to know.
THE COURT: I have stated that as far as I'm concerned that is sufficient. You will be permitted to use the deposition for all proper purposes." (All emphasis supplied.)
The alleged details of the accident, as narrated by Moulton in his deposition, were so harmful to defendant's case that if there was error in admitting the deposition and allowing it to go to the jury, it was reversible. We have italicized the passages which bear directly upon the vital and crucial point of admissibility.
The ground rules governing introduction of the deposition are found in Rule 1.21(a), (b), and (c), of the Florida Rules of Civil Procedure, Volume 30, F.S.A. These subsections, which pinpoint the conditions making such a deposition available, are as follows:
"(a) When depositions may be taken. Any party may take the deposition of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action, or for both purposes. After commencement of the action the deposition may be taken without leave of court, except that leave, granted with or without notice, must be obtained if notice of the taking is served by the plaintiff within twenty (20) days after commencement of the action. The attendance of witnesses may be compelled by the use of subpoenas as provided by law. The deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes.
* * * * * *
(d) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against *42 any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:
* * * * * *
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: 1. That the witness is dead; 2. that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or 3, that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or 4, that the party offering the deposition has been unable to procure the attendance of the witness; or 5. upon application and notice, that such exceptional circumstances exist as to make it desirable in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."
The above quoted sub-sections of the Rule make the deposition of such witness admissible "if the Court finds * * * that the witness is at a greater distance than one hundred miles from the place of trial or hearing", and it is the contention of plaintiffs that the trial Court did make such finding, and that having made such finding, the privileges of the quoted rule flowed to the plaintiffs as a necessary consequence. But such contention ignores the fundamental proposition that elementary due process would require that an adequate showing must be first made as a necessary prerequisite to such finding being made by the Court. And this in turn would depend upon what the law considers and deems as to the quality and character of such "adequate showing".
We believe this question has been answered by the previous decisions of this 2nd District Court in Dickson v. Feiner's Organization, Inc., Fla.App. 1963, 155 So.2d 703, and Weber v. Berry, Fla.App. 1961, 133 So.2d 327, and of the 3rd District Court in Driscoll v. Morris, Fla.App. 1959, 114 So.2d 314.
In Dickson there was the sworn "testimony of a brother" of the deponent adduced as a predicate for admission of the deposition and this Court sustained such admission, but in so doing specifically emphasized the rule governing such admission, in the following language (text 155 So.2d 704):
"In order to render a deposition admissible in evidence, some sufficient grounds must first be made to appear of the existence of one of the conditions set forth in the rule. Proof which raises a reasonable presumption is sufficient and determination is largely vested in the sound discretion of the trial court." (Emphasis supplied.)
It will be observed that this Court in Driscoll in effect defined the "sufficient grounds" to consist of "proof".
In Weber this Court had occasion to review the refusal of the trial Judge to admit certain depositions in evidence and in upholding such refusal, this Court, speaking through Chief Judge Allen, said as follows (text 133 So.2d 329):
"A procedural question arose in this case when the depositions of the two plaintiffs were offered in evidence. The trial judge ruled against the admissibility of the depositions and also suppressed the depositions. We shall not discuss the correctness vel non of the lower court's ruling on the motion to suppress since we shall hold the plaintiffs had not shown their right to use the depositions at the trial of this cause. The plaintiffs brought this complaint while residing in Pinellas County. Subsequently they moved to Chicago and their depositions were taken in Chicago. The attorney for the appellants argues that *43 the court should take judicial notice that Chicago is more than 100 miles from Pinellas County, where the action was tried. The depositions were naturally taken prior to the trial of the case and there was no evidence before the court that the plaintiffs `were more than 100 miles away' at the time of the trial."
The opinion then refers to and quotes Rule 1.21(d) (3), and then proceeds as follows 
"The recent case of Driscoll v. Morris, Fla.App. 1959, 114 So.2d 314, by the Third District Court of Appeal held that where no evidence other than the deposition itself was offered to show deponent's inability to appear in person, it was not an abuse of discretion to exclude the deposition. The court, in its opinion, states at page 316:
`Likewise, no evidence outside the deposition itself, was proffered to show that the deponent was unable to attend in person as a witness before the court, a duty we conclude that was upon the plaintiff.'
We hold that there was a duty on the part of the plaintiffs to adduce testimony which they failed to do, to show their right to use the depositions in question." (Emphasis supplied.)
In Driscoll the 3rd District Court in considering the question said (text 114 So.2d 316):
"* * * no evidence, outside the deposition itself, was proffered to show that the deponent was unable to attend in person as a witness before the court, a duty we conclude that was upon the plaintiff." (Emphasis supplied.)
From the foregoing, it is obvious that the "showing" required to be made as a predicate for introduction of such a deposition must consist of proof in the form of evidence. The words "evidence" and "proof" pervade the opinions aforesaid, which directly interpret the rule here involved. And such proof and such evidence can only be of a sworn character. Certainly it could not encompass the mere unsworn statement of the attorney for one of the litigants. And this is in no way a reflection upon the attorney nor is it in derogation of his prestigious role as an officer of the Court. It is simply applying the age-old requirement that the requisite mode of proving a fact is by sworn testimony, whether it is a fact to be adduced in proving or disproving a case upon the merits or is a fact necessary to be proved to establish a legal predicate for introduction of other facts.
Lastly, the wisdom of the rule is revealed by the record here. The trial began on June 5, 1964, and the jury's verdict returned on June 6th. But before the trial was over the whereabouts of LaDon Moulton was suspected by certain of the Court officials but not disclosed to the parties or their counsel until "after said trial had terminated on June 6, 1964". Immediately it was thereupon verified that the place of repose of Moulton during the entire trial proceedings had been the common jail of Pasco County which was "in close proximity to the Courtroom where said trial was being conducted" and that he had been incarcerated therein "since January 10, 1964, serving a * * * sentence for conviction of a crime". It was thereafter disclosed that Moulton had been AWOL from Ft. Knox, Ky., since December 23, 1963 and that his imprisonment in said jail had been known by his military superiors at Ft. Knox since about May 8, 1964, when they obtained such information from the local county jailor.
The foregoing facts were before the trial Judge upon consideration of defendant's motion for new trial. In the meantime plaintiffs' counsel had procured affidavits from five of the six trial jurors. Each of the affidavits, obviously prepared on the same typewriter and sworn to before the same Notary Public on the same date (except one), pointedly asserted inter alia that *44 the jury disregarded the testimony of Moulton.
For instance juror Beck deposed that 
"* * * we decided not to consider LaDon Moulton, because of the conflicts in his testimony and because he said he just looked over his shoulder just before the impact, and so all of the jurors stated that he could not have seen much anyway."
Juror Gilger deposed that 
"The Judge said we did not have to believe a witness, and since there were so many conflicts in the two depositions and the statement of the witness Mr. Moulton we just completely disregarded anything he said. It was apparent that he only saw the accident from over his shoulder and we did not believe he could have seen much anyway."
And juror Pickrell stated that 
"I and the other jurors completely disregarded the testimony of LaDon Moulton because he was indefinite in his statements and because he had such a short look at the accident that we felt he could not have known much about who was at fault."
Juror Hodgdon, in his affidavit said 
"All of us had decided early, that we would forget the testimony of LaDon Moulton. There were conflicts in his testimony and he only got to see the accident for a fraction of a second by his own admission. I personally did not think he saw much and the other jurors said the same thing."
And lastly, juror Fernandez in his affidavit stated 
"We also decided soon after we had gone back to the jury room that we could not believe LaDon Moulton, and we based our verdict on the defendant's own testimony and the pictures. The reason I did not believe LaDon Moulton was because his two depositions and his statement were in such conflict and because he said he saw the accident happen by glancing over his shoulder. I did not believe that he saw very much, and the other jurors stated the same thing, and so we agreed to forget his testimony and not consider it."
The trial Judge, in his order denying the motion for new trial, observed therein that 
"The defendant contends that the Court erred in allowing the plaintiff to introduce into evidence the deposition of the witness, LaDon Moulton.
At the time this deposition was offered in evidence, the plaintiffs' attorney made a satisfactory showing for the introduction of a deposition of a non-available witness and the Court found that the deposition should be received in evidence under Rule 1.21d(3). The Court could and should have made no other finding at that time. Unbeknownst to the attorneys for either party, the witness actually was in the Pasco County Jail at the time of the trial. The Court finds that the deposition was properly admitted."
And in a "supplemental order" entered a few days later, the Judge denied a motion to strike the aforesaid jurors' affidavits filed by defendant, stating therein 
"The defendant's Motion to Strike the Affidavits should be denied. However, it is proper for this Court at this time to state that it did not consider said affidavits or the contents thereof in denying the Motion for a New Trial."
Thus we have a most anomalous situation. Five jurors stated that the jury disregarded Moulton's deposition, and the trial Judge stated in turn that he disregarded the jurors' affidavits. But the "reverberating clang", to use the language of Mr. Justice Cardozo in the case of Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196, that permeated Moulton's deposition cannot be so easily dismissed. It *45 went to the jury over strenuous objections of defendant's counsel. It was heard by the jury along with all the other testimony. Obviously, if there was error in its original reception as part of the evidence, it remained error, and its character as such cannot be magically changed merely because some of the jurors belatedly discounted it.
In Astor Electric Service v. Cabrera, Fla. 1952, 62 So.2d 759, text 762, Justice Terrell, speaking for the Supreme Court, said:
"Many jurisdictions in this country are committed to the rule that affidavits of jurors may be admitted to explain and uphold their verdict but never to impeach or overthrow it. This general rule has been qualified to the extent that affidavits of jurors * * * are never admitted * * * to reveal the circumstances which prompted their conclusion. Coker v. Hayes, 16 Fla. 368; Turner v. State, 99 Fla. 246, 126 So. 158; Consolidated Rendering Co. v. New Haven Hotel Co., D.C., 300 F. 627; Wigmore on Evidence, 2nd Ed., Vol. 5, page 108, 64 C.F. Trial, par. 914." (Emphasis supplied.)
In the past, there has been an increasing contrariety of opinion among the bench and bar as to what circumstances and purposes will justify procuring of post-trial affidavits of jurors, but any such uncertainty has now been removed by the adoption by the Supreme Court of Florida on May 11, 1966, effective June 15, 1966, of new Canon 23, of the Code of Ethics Governing Attorneys, 31 F.S.A. entitled Attitude Toward Jury, which reads inter alia as follows:
"* * * Subject to any limitations imposed by law it is a lawyer's right, after the jury has been discharged, to interview the jurors solely to determine whether their verdict is subject to any legal challenge provided he has reason to believe that ground for such challenge may exist, and further provided that prior to any such interview made by him or under his direction, he shall file in the cause, and deliver a copy to the trial judge and opposing counsel, a notice of intention to interview such juror or jurors setting forth in such notice the name of each such juror. The scope of the interview should be restricted and caution should be used to avoid embarrassment to any juror and to avoid influencing his action in any subsequent jury service."
We will not discuss further points raised on this appeal because they are either without merit or will not be likely to re-occur in any further trial.
Rehearing granted.
Reversed and remanded for new trial.
LILES, Acting C.J., and FLYNN, ROGER D., Associate Judge, concur.

ON APPELLEES' MOTION TO DISMISS APPEAL, AND APPELLANT'S MOTION TO STRIKE
PER CURIAM.
On January 4, 1967, this Court released its opinion and judgment herein, granting rehearing, reversing the judgment appealed from, and remanding the cause to the lower Court for new trial. On January 13, 1967, appellees' counsel filed with this Court in this cause a document entitled "Notice of Settlement", but which was actually a motion asking this "Court to enter an order dismissing this appeal as moot and to vacate previous orders", upon the ground that "the within matter" had, on December 29, 1966, been "compromised and settled" for $80,000.00 as result of negotiations between Appellees' counsel and Appellant's insurance claims representative "who controlled settlement negotiations." The document, which was unverified, recited substantially that since January 4, 1967, Appellant's counsel had refused to confer with Appellees' counsel "to carry out the paper work necessary to complete the compromise and settlement," but that as Appellees' counsel *46 "understands the law" such "compromise and settlement renders this case moot and thus it would be improper * * * to file a petition for rehearing."
On January 26, 1967, counsel for Appellant filed Motion to Strike the "Notice of Settlement" or Motion to Dismiss Appeal aforesaid of Appellees, on three grounds, namely, (1) said document "is not based upon a Stipulation of the parties and thus fails to comply with Rule 3.13(a) of the Florida Appellate Rules, under which it purports to be filed," (2) that the pleading is not authorized under said rules, and (3) "there has been no bona fide settlement of this cause and Appellees' counsel was so advised by telephone on the day that the `Notice' was filed herein." Said Motion to Strike recites that Appellant stood "ready and willing" to set forth the reasons why "the settlement was not bona fide," and has appended thereto certain factual material for consideration if the "bona fides" of the settlement should become an issue in this Court.
On February 10, 1967, counsel for Appellee filed certain papers herein, which he denominates as: (1) Reply to Appellant's Motion to Strike; (2) Appellees' Motion for Additional Counsel; and (3) Answer to Appellant's Reply. These "papers" likewise contain alleged factual material for consideration by this Court if deemed necessary.
We find it unnecessary for this Court to determine, or even consider, the factual dispute between the parties or respective counsel; that is a matter for other forums. The pending motions of the parties in this Court may be determined here upon grounds much narrower than factual considerations.
Rule 3.13(a) of the Florida Appellate Rules, 31 F.S.A., under head of "Dismissal of Causes When Settled," provides:
"When any cause pending in this Court is settled by compromise or otherwise prior to a decision on the merits, it shall be the duty of both parties to immediately notify the Court of such settlement by a signed stipulation for dismissal." (Emphasis supplied).
Concurrence in the opinion and decision of this Court granting rehearing and reversing the cause was evidenced on December 23, 1966, by all three Judges participating in consideration of this cause, of which this Court will take judicial notice. Hence, under the showing of Appellees' own "Notice of Settlement" and Motion to Dismiss the "cause pending in this Court" had not been "settled * * * prior to a decision on the merits," so as to bring such dismissal motion within the purview of said Rule 3.13(a).
Furthermore, there has been no "signed stipulation for dismissal" by "both parties" to the cause here as contemplated by the rule.
Accordingly it is the order of this Court that Appellant's Motion to Strike is granted, and it is further ordered that the opinion and mandate of this Court reversing the cause on the merits be forthwith issued with instructions that further proceedings be had in the lower Court not inconsistent therewith.
Order in accordance herewith.
LILES, Acting C.J., and PIERCE, J., and FLYNN, ROGER D., Associate Judge, concur.