**Guillermo AILLON, Petitioner,**

v.

**STATE OF CONNECTICUT and Hon. William L. Hadden, Jr., Respondents.**

**Civ. No. N 84–413(WWE).**

United States District Court,
D. Connecticut.

Oct. 24, 1984.

Jonathan E. Silbert, New Haven, Conn., for petitioner.

Julia D. Dewey, New Haven, Conn., for respondents.

## RULING ON WRIT OF
## HABEAS CORPUS

EGINTON, District Judge.

In the above-captioned case, this court dismissed Guillermo Aillon's petition for writ of habeas corpus on October 18, 1984, on the record in open court. This ruling now sets forth the findings of fact and conclusions of law.

For the reasons discussed below, this court notes that its ruling involves such questions of law as to make review by an appellate court appropriate.

### Findings of Facts

Guillermo Aillon has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, to determine whether his third murder trial violates his right against double jeopardy. His action is against the state of Connecticut and the judge presiding over the third trial, the Honorable William L. Hadden, named in his official capacity. The state trial court has held that Aillon has waived his double jeopardy defense through his failure to bring a timely motion. As petitioner has not proven ineffective assistance of counsel, so that habeas review might overcome the waiver, the petition is dismissed.

Petitioner Aillon was indicted for a triple murder, tried by a jury, and, in September 1973, found guilty on all three counts. Aillon then filed a petition for a new trial, claiming that the trial judge had held a private, prejudicial conversation with a juror during the jury's deliberation. *Aillon v. State*, 168 Conn. 541, 543–44, 363 A.2d 49 (1975). The state supreme court, reviewing Aillon's petition, found that the conversation was "improper." *Id.* at 547, 363 A.2d 49.

The court stated that "communications between a judge and a jury, especially after the jury have begun deliberations, should be made only in open court in the presence of the parties. In a criminal trial this rule takes on constitutional dimensions since the accused has a right to be present at every stage of the trial and to have the assistance of counsel for his defense." *Id.* at 546, 363 A.2d 49 (citations omitted).

In a second decision concerning Aillon's petition for a new trial, the supreme court found that both of the trial court's two evidentiary hearings had failed to establish "what was said" during the judge's conversation with the juror. Accordingly, the supreme court found that the state did not rebut the presumption of prejudice arising from the ex parte communication. The supreme court thus implicitly found that the trial judge's conduct caused prejudice to Aillon. The court granted a new trial. *Aillon v. State*, 173 Conn. 334, 339–40, 377 A.2d 1087 (1977). The trial ensued in October 1978, under a second judge.

This second trial ended with a hung jury, and a mistrial was declared in March 1979. At the end of the second trial, Aillon moved for the entry of a judgment of acquittal, based on double jeopardy, and other grounds. Aillon claimed that his first trial was the "functional equivalent of a mistrial," because the judge's improper conversation with the juror was "coercion of the jury [designed] to break its declared deadlock." *State v. Aillon*, 189 Conn. 416, 421, 456 A.2d 279 (1983) (quoting Aillon's brief on the motion for acquittal). Aillon argued that double jeopardy would result if a third trial followed two mistrials. The trial court denied Aillon's motion for acquittal.

On appeal, the Connecticut Supreme Court affirmed the lower court. The supreme court held that even if Aillon's first trial were deemed a mistrial, double jeopardy would not result from a third trial following two mistrials. *State v. Aillon*, 182 Conn. 124, 126–28, 135–38, 438 A.2d 30 (1980), *cert. denied*, 449 U.S. 1090, 101 S.Ct. 883, 66 L.Ed.2d 817 (1981).

The supreme court noted that Aillon made "no allegation of prosecutorial or judicial bad faith." *Id.* at 131, 438 A.2d 30. Aillon's first double jeopardy claim, made at the end of his second trial, did not attribute bad faith to the first trial judge's improper conduct.

Allegations of the first judge's bad faith became the crux of Aillon's second double jeopardy claim. The defendant moved to dismiss, arguing that the judicial over-reaching at his first trial had foreclosed the state's right to proceed. Aillon also moved for an evidentiary hearing to establish the first judge's bad faith. Both motions were dismissed by the trial court. *State v. Aillon,* 189 Conn. 416, 421–22, 456 A.2d 279 (1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 124, 78 L.Ed.2d 122 (1983). Affirming the lower court decision, the state supreme court found that Aillon could not maintain this second double jeopardy claim, as it was barred under the principle of res judicata. *Id.* at 423–29, 456 A.2d 279. The court's decision stated that the first trial judge's misconduct was the factual basis of Aillon's first double jeopardy claim. Although Aillon now sought to establish the judicial overreaching, the court found that "[t]his slight shift in evidentiary basis" did "not constitute a new claim." *Id.* at 426, 456 A.2d 279. The court's earlier judgment was final, and therefore precluded its review of any evidence that Aillon might have offered with his first double jeopardy claim. *Id.* at 423, 456 A.2d 279.

The court reserved judgment on the trial court's ruling that Aillon had waived the defense of double jeopardy by failing to bring the claim before his second trial. *Id.* at 422–23, 456 A.2d 279. Aillon filed a petition for writ of habeas corpus in the state superior court, in November 1983. Petitioner, now represented by new counsel, claimed that the attorney who had served him in his first and second trials had provided ineffective assistance of counsel. Petitioner alleged that counsel's failure to raise a double jeopardy claim prior to the second trial was below the range of competence that is reasonably expected of attorneys in criminal cases. *See* Amended Petition of July 23, 1984, ¶ 20; Stipulation of September 4, 1984, ¶ 2. The petition was dismissed.

Aillon was tried for a third time in July 1984 and was found guilty on all three counts. Before the third trial commenced, Aillon filed the petition for writ of habeas corpus which is now before the court. The petition alleges that:

(1) the first trial judge knew or should have known that his improper conversation would provoke a mistrial.

(2) The judge's conduct foreclosed Aillon's right to be judged by the tribunal summoned to the case.

(3) Petitioner's counsel's failure to raise a double jeopardy claim at the end of the first trial constituted ineffective assistance of counsel.

(4) A third trial would violate petitioner's right against double jeopardy.

(5) Petitioner has exhausted his state remedies. Although there is a pending appeal of the state court's dismissal of the habeas corpus petition, this appeal could not afford relief, for it would not be heard before the start of the third trial. Amended Petition of July 23, 1984, ¶ 1, 14–26.

While this court was holding hearings on the petition for writ of habeas corpus, Aillon's third jury returned a verdict of guilty on all three counts. Sentencing was scheduled for October 26, 1984.

Aillon's first defense counsel, Howard Jacobs, testified on October 2, 1984. At this hearing, the parties orally stipulated that Jacobs' service to his client was "beyond the scope of effective assistance of counsel," and the court found that Jacobs' service was "exceptional." Both the parties and the court, however, made the single exception of Jacobs' failure to raise the double jeopardy claim prior to the second trial. Transcript of October 2, 1984 hearing at 65. [Hereinafter referred to as Transcript].

Jacobs testified that at the time Aillon's second trial began, in 1978, he was aware of the double jeopardy cases *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), and *Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977). Transcript at 51. He also testified that at that time he believed that the first trial

judge's conduct amounted to overreaching. Transcript at 51–55, 20–35, 40–47. Nevertheless, Jacobs testified, he did not make a double jeopardy or overreaching claim at the beginning of the second trial because he read the *Jorn* line of cases to be limited to a mistrial situation. He believed the doctrine of these cases—there can be no retrial after a first trial evidencing judicial misconduct—did not apply to a situation such as Aillon's first trial. Finally, Jacobs testified that his failure to make a timely double jeopardy claim was not a tactical decision. Transcript at 56.

The court found this testimony concerning the failure to raise the double jeopardy issue to be factual. With the wisdom of hindsight, Jacobs' decision against making a double jeopardy claim can be seen as a mistake. Yet his interpretation of *Jorn* and the cases following it is an interpretation that a competent attorney might reasonably make at that time, in that situation. Moreover, Jacobs' decision to move for a new trial, upon discovering the judge's improper conduct, was a motion to obtain the most obvious relief for his client. The court cannot find that the decision to move for a new trial instead of double jeopardy was an inappropriate choice. The court finds that Jacobs provided competent legal assistance to his client.

### Conclusions of Law

*Exhaustion of remedies*

▮ The Connecticut Supreme Court had informed Aillon that it would not review the trial court's dismissal of his habeas petition until after the third trial had commenced. Amended Petition for Writ of Habeas Corpus of July 23, 1984, ¶ 25. Jeopardy attaches when a jury is impaneled. *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). Thus the Supreme Court is unable to afford Aillon the relief from double jeopardy that he has requested. Aillon has exhausted his state remedies, so that this court may hear his petition. *Rose v. Lundy*, 455 U.S. 509, 515–22, 102 S.Ct. 1198, 1201–05, 71 L.Ed.2d 379 (1982).

*Mootness*

▮ This court's dismissal of Aillon's petition for writ of habeas corpus was made from the bench after Aillon's third trial, the subject of the petition, had concluded. Sentencing has not yet taken place. For this reason, Aillon's petition is not moot.

The fifth amendment protection against double jeopardy is a safeguard against "the hazards of trial and possible conviction." *Serfass v. United States*, 420 U.S. 377, 387, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (quoting *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957)). The crucial hazard of conviction is the imposition of a criminal sentence. *But see Richardson v. United States*, —— U.S. ——, ——, 104 S.Ct. 3081, 3087, 82 L.Ed.2d 242 (1984) (Brennan, J., concurring and dissenting) (suggesting that majority opinion states that an unreversed conviction would terminate jeopardy). Aillon, praying for relief from double jeopardy, can still be granted a remedy should his claim be found valid.

*Double jeopardy claim*

▮ Of the several claims alleged in Aillon's petition, all but two have been reviewed by the state courts. These previously reviewed claims will not be considered by this court. We adhere to the basic judicial policy against federal court interference with state court proceedings. *Younger v. Harris*, 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). Prior state court decisions generally control even federal habeas petitions if the state decision was on the merits and if it concerned the same evidence and legal arguments heard in federal court. *Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963).

Two claims have not been reviewed by the state courts: (1) Aillon's first attorney rendered ineffective assistance of counsel and (2) the first trial judge knew or should have known that his conduct would provoke a mistrial. The second claim of judicial intent is the crux of petitioner's double jeopardy argument.

We do not reach the second claim, for we are again bound by an earlier state court

decision, denying Aillon's second double jeopardy claim. The trial court found that since Aillon's motion to dismiss was based on events of his first trial, it should have been brought before the second trial. Citing *State v. Jones*, 166 Conn. 620, 630, 353 A.2d 764 (1974), the court found that because Aillon had not claimed double jeopardy until after his second trial, he has waived the defense. *State v. Aillon*, 189 Conn. 416, 422, 456 A.2d 279 (1983) (state supreme court reserved judgment on this issue, *id.* at 423, 456 A.2d 279).

■ The trial court's finding of waiver is not an absolute bar to Aillon's double jeopardy claim. Although the habeas writ will not permit federal review of state decisions grounded on substantive state law, it will permit federal review of some decisions grounded on procedural state law. *Wainwright v. Sykes*, 433 U.S. 72, 81–82, 97 S.Ct. 2497, 2503–04, 53 L.Ed.2d 594 (1977).

■ The limit to federal powers is drawn at petitioners who have "deliberately bypassed the orderly procedure of the state courts." *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963). Defendants may not knowingly commit a procedural default only to gain federal review. *Id.* at 439, 83 S.Ct. at 849. Yet the *Fay* decision's express prohibition of deliberate by-passing proved ineffective. *Sykes*, 433 U.S. at 89, 97 S.Ct. at 2507. A stronger screening test was set forth in *Davis v. United States:* a procedural default would bar habeas review, unless petitioner could show "cause" as to why he failed to make a timely motion. *Davis v. United States*, 411 U.S. 233, 237–43, 93 S.Ct. 1577, 1580–83, 36 L.Ed.2d 216 (1973). The final requirement was introduced in *Francis v. Henderson*, 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976): petitioner must show cause and "actual prejudice." The standards for the double test were initially left "open" and undefined by the Supreme Court. *Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506.

■ Ineffective assistance of counsel, if it satisfies the prejudice test, may be suffi-

cient cause to allow habeas relief. *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the *Strickland* opinion, the Supreme Court attempted to define prejudicial assistance of counsel, while cautioning that "specific guidelines are not appropriate." *Id.* 104 S.Ct. at 2065. The Court suggested that the defense attorney's errors must be so "serious" that the defendant is effectively deprived of counsel, violating the sixth amendment guarantee. The prejudice that results must make it impossible for the defendant to receive a fair trial. *Id.* 104 S.Ct. at 2064.

■ The Court warned against second guessing erroneous decisions, and stated that judicial scrutiny of counsel's conduct must be "highly deferential." So long as an attorney's conduct is within the "wide range of competent assistance," then the attorney is within the sixth amendment, and there can be no "cause" to satisfy the habeas review test. *Id.* 104 S.Ct. at 2065–66. Finally, defendant must show that but for his attorney's errors, the trial would probably have a different outcome. *Id.* 104 S.Ct. at 2068.

The outcome question is difficult to predict here, as the state court has not held hearings on the first trial judge's intent in holding the conversation with the juror. Under *Oregon v. Kennedy*, mere judicial overreaching would not invoke Aillon's double jeopardy protection. Only judicial intent to cause a mistrial would suffice. *Oregon v. Kennedy*, 456 U.S. 667, 671–79, 102 S.Ct. 2083, 2087–91, 72 L.Ed.2d 416 (1982).

■ Nevertheless, we assume, without so holding, that defense counsel's failure to make a timely double jeopardy claim subjected Aillon to two trials. We assume that had the double jeopardy claim been properly made, it would have been granted.

We have previously found that Attorney Howard Jacobs' conduct was not simply within the range of competent assistance, but that it was exemplary. Accordingly, we cannot find that Aillon was effectively deprived of counsel. Under *Strickland* then, Aillon has failed to show that his

counsel's procedural default satisfies the habeas cause requirement.

The court recognizes that recent appellate decisions have applied a test that is much less demanding than that of *Strickland*. These cases state that ineffective assistance of counsel may fall short of a sixth amendment violation, but may still constitute cause for habeas relief. *Garrison v. McCarthy*, 653 F.2d 374, 378 (9th Cir.1981); *Carrier v. Hutto*, 724 F.2d 396, 401 (4th Cir.1983) (citing *Garrison*); *Runnels v. Hess*, 653 F.2d 1359, 1364 (10th Cir.1981).

The cases make a crucial distinction between strategic and inadvertent procedural waivers. A strategic waiver is deliberate, intentional. *See Carrier*, 724 F.2d at 400. It is generally associated with "sandbagging," purposefully defaulting in state court in order to obtain federal review. *Garrison*, 653 F.2d at 378; *Runnels*, 653 F.2d at 1363–4; *but see Carrier*, 724 F.2d at 400. A deliberate, tactical failure to make a timely motion will never constitute cause, unless it is so egregious that it effectively deprives the defendant of counsel. *Carrier*, 724 F.2d at 401. In contrast, if the waiver has been caused by ignorance or inadvertence, then a "lesser showing" will constitute cause. *Garrison*, 653 F.2d at 378.

These appellate cases do not make clear, however, whether Howard Jacobs' failure was inadvertent or deliberate. We find the question a close one. Certainly Jacobs was aware of the double jeopardy issue. He testified that he was aware of the *Jorn* line of cases, and had mistakenly concluded that they were inapplicable. His error cannot be easily characterized as either inadvertence or ignorance. Rather, Jacobs made a decision based on his considered, and substantial, knowledge of the law.

Neither was Jacobs' decision "tactical," as that term is used in the recent cases. The government has not suggested that Jacobs' procedural default was a sandbagging strategy, nor is such a ploy indicated in the record. Weighing the situation here between two vague terms, we find that Jacobs' error was inadvertent.

The test for cause is therefore a "lesser showing" than a sixth amendment violation. But just what that lesser showing may be remains unclear in *Garrison, Carrier*, and other cases cited by petitioner. Left without an articulated standard, this court relies on *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and the second circuit decision *United States v. Dukes*, 727 F.2d 34, 43–44 (2d Cir.1984). Second guessing trial strategies simply because the strategies fail is not a basis for a sixth amendment violation. In this instance, however, this court's test for ineffective assistance of counsel approximates that of the sixth amendment: were counsel's decisions within the range of choices which would be made by competent attorneys? Howard Jacobs' decisions were within that range. His counsel was not ineffective. Aillon has failed to establish the cause necessary to grant his petition for writ of habeas corpus.

Aillon's double jeopardy claim has been deemed waived by the state trial court. *State v. Aillon*, 189 Conn. 416, 422–23, 456 A.2d 279 (1983). For this reason, the petition is denied.