[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Petitioner John Denby filed an Amended Petition for a Writ of Habeas Corpus in this matter on October 2, 1996. Said amended petition was dated September 20, 1996. On October 24, 1996 the Respondent filed his Return dated October 2, 1996. The Petitioner was convicted after a jury trial of Possession of Cocaine with Intent to Sell by a non-drug dependent person in violation of Connecticut General Statute § 21a-278(b) and Possession of Cocaine with Intent to Sell within One Thousand Feet of a School in violation of Connecticut General Statute § 21a-278a(b). On January 8, 1993 the petitioner received consecutive sentences of sixteen years and three years incarceration on said charges for a total effective sentence of nineteen years. The Petitioner was represented during his trial by Attorney Donald Dakers.
The Petitioner claims he was denied the effective assistance CT Page 8882 of counsel in his trial in that:
a) he failed to investigate and present evidence of the Petitioner's drug dependency, and
b) he failed to object to conversations and conduct between the prosecutor and a juror, who became the foreperson, that were prejudicial to the Petitioner.
The Petitioner testified that he was a drug dependent person land that his attorney did not put in evidence of this dependency in his trial. The Petitioner testified that he was arrested in 1991 for using drugs and that while he was incarcerated drugs were found in his system. He also stated that as part of his parole he had to undergo drug counseling. He also stated that he thinks there are hospital records that would show he was drug dependent. The Petitioner on cross-examination admitted that he testified during the trial about his drug use and that he was a drug dependent person. The Petitioner also stated that Willie Garver testified for him during the trial that he (Petitioner) was a drug user and that he (Garver) had used drugs with the Petitioner.
Attorney Dakers testified that he does not remember the Petitioner asking him to subpoena records to show he (Petitioner) was drug dependent but that it could have occurred. However he said if the Petitioner asked him to do so he believes he would have obtained said drug records. Attorney dakers stated he did not pursue the drug dependency issue at trial because of his erroneous believe that the maximum penalty under Connecticut General Statutes § 21-277 and § 21a-278 were the same, namely twenty years. He stated he recently learned that the maximum penalty under Connecticut General Statute § 21a-277
is fifteen years and under Connecticut General Statute § 21a-278 the maximum penalty is twenty years. He testified that at the time of trial he thought the only difference in the penalty portions of those statutes was that Connecticut General Statute § 21-278 had a mandatory five year incarceration period and that Connecticut General Statute § 21a-277 had no such mandatory minimum sentence. He testified that if he knew the maximum sentences relative to the aforementioned statutes were different he might have pursued a different trial strategy on behalf of the Petitioner. He testified that he never thought the defendant would receive a nineteen year sentence of incarceration if convicted of both of these crimes. CT Page 8883
"Our Supreme Court has adopted the two-pronged analysis ofStrickland v. Washington, supra, to determine if counsel's assistance was ineffective. Bunkley v. Commissioner ofCorrection, 222 Conn. 444, 455, 610 A.2d 598 (1992). Sekou v.Warden, 216 Conn. 678, 690, 583 A.2d 1277 (1990). Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. Bunkley v.Commissioner of Correction, supra; Hull v. Warden, 32 Conn. App. 170,174, 628 A.2d 32 (1993); Siano v. Warden, supra."
"`To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [he] was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' (Citations omitted; internal quotation marks omitted.) Siano v.Warden, supra; Hull v. Warden, supra; Copas v. Warden, supra, 683-84."
"`To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in this appeal. . . . The second prong is thus satisfied, if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (citations omitted; internal quotation marks omitted). Siano v.Warden, supra, 98; Bunkley v. Commissioner of Correction, supra, 454-55." Davis v. Warden, 32 Conn. App. 296, 301-303,629 A.2d 440, cert. denied, 227 Conn. 924, 632 A.2d 701 (1993). Johnson v.Commissioner of Correction, 36 Conn. App. 695, 701, 702 (1995).
After hearing the evidence this court finds that the CT Page 8884 Petitioner has failed to sustain his burden of proof on either prong of the test set forth in Strickland v. Washington, supra, as to any of the allegations in his Amended Petition dated September 20, 1996. He has not proved that his counsel's representation of him was deficient. Further he has not proved that he was prejudiced by his attorney's representation of him.
The Petitioner also claimed there was jury tampering and prosecutorial misconduct and juror misconduct in his trial.
The Petitioner claims that ON FIVE OCCASIONS there was communications between the State's Attorney Mary Ready and a female juror who was the jury foreperson. The first time occurred when he Petitioner heard the juror and State's Attorney talking to each other, the second time was when Attorney Dakers told him the juror and State's Attorney had communications; the third time was when he Sheriff told the Petitioner that the juror had called the State's Attorney to tell her she was going to be late for court, he fourth time was before the verdict when the Petitioner heard he juror thank Attorney Ready, and the fifth time occurred after he verdict when the Petitioner heard the juror again thank the State's Attorney.
The Petitioner John Denby testified that the trial judge asked State's Attorney Mary Ready if she had any communication with the jury and she said "no". He testified that the juror involved was the foreperson of the juror. Mr. Denby that stated the jury would leave and one juror would stay behind and talk to Attorney Ready. Mr. Denby claims the following conversation took place between the juror and Attorney Ready and that the trial judge heard it.
Juror — "I thought you said you were going to have the case over in two or three days."
State's Attorney — "I'm going to try and get the trial over for you because I know you have a problem with your daughter."
Juror — "You said that yesterday"
State's Attorney — "The defendant has to put his witnesses on".
Juror — "You've got to do something". CT Page 8885
State's Attorney — "There is a day care center across the Street and I will take you there."
According to Mr. Denby the trial judge overheard the above conversation but that the Stenographer had already left the courtroom so that there is no record of it. All the parties stipulated that there was no record of any conversation between the Judge, State's Attorney and the juror. Mr. Denby testified that this trial counsel, Attorney Donald Dakers said he saw the State's attorney and a juror talking in the hallway and then get on the elevator together.
Mr. Denby said the day after the aforementioned conversation he came to court for the trial in the morning and the Sheriff told him that the juror called Attorney Ready and said she was going to be late. The Sheriff told the Petitioner he could do something and come back later. Mr. Denby said there was about an hour break because of this.
The Petitioner also testified that he heard the juror say to Attorney Ready "Thank you for helping me to find a day care but I could not get my child in that one but my mother-in-law took my child." It is not clear to the court when this conversation allegedly took place or if it is one of the five alleged communications previously discussed. The trial evidence, charge, and jury deliberation only took two or three days.
Mr. Denby also testified that after the jury verdict the juror again thanked the State's Attorney and then he (Petitioner) was taken away.
The Petitioner testified that Attorney Dakers told him that he (Petitioner) could not talk to a juror and he asked Attorney dakers why could the State's Attorney do it then.
The Petitioner's girlfriend Stephanie Pagan testified during the trial. She testified that she saw a juror and the State's Attorney talking with each other two times. The first time this occurred was a little before the noon recess when the case was on trial. Ms. Pagan testified she saw the juror and State's Attorney talking with each other as they left the courtroom. She testified she then saw them get on an elevator together. However she said she did not hear the conversation between the juror and the State's Attorney. CT Page 8886
The Petitioner's brother, Paul Denby, also testified in this matter. He stated he saw the State's Attorney and a juror talking with each other two times during the trial. The first time occurred at the end of the day when the Judge called the State's Attorney, defense Attorney and juror to the bench. He said they were discussing day care and the juror said she might have a problem continuing case. He claims the State's Attorney told the juror that she would assist her with her day care problem. Paul Denby testified he walked out of the courtroom behind the juror and State's Attorney. He testified that the State's Attorney handed the juror a folded piece of paper and they both got on the elevator together while talking to each other. Paul Denby stated he told Ms. Pagan who was standing there "Look at that". He did not tell his brother, the Petitioner, about what he saw for two weeks. Paul Denby said he thought the State's Attorney was just being a good samaritan because he was not aware until sometime later that jurors were not to have contact with anyone.
Attorney Donald Dakers, the Petitioner's trial counselor testified in this matter. He stated it was a short trial even though there were many witnesses who testified. Attorney Dakers said he was present one day when a female juror had a day care problem. He testified he was at the defense table with the Petitioner when a lady came out of the jury room and was standing near the bench with the Judge and the State's Attorney. Attorney Dakers said what they were discussing was off the record. He stated jury deliberations were to start the next day and that the juror had a problem with a child. He stated he did not know if State's Attorney, Mary Ready was asked to get involved by the Judge or if she just got involved on her own. Attorney Dakers testified that the trial judge asked the State's Attorney about a catholic day care center or that she talked about such a day care center. Attorney Dakers testified he never objected to the aforementioned discussion. He said he was surprised at the comraderie between the judge, State's Attorney and the juror. He said the discussion was initiated by the trial judge. Attorney Dakers said he is sure that he saw the juror and the State's Attorney in the hallway and he thinks he saw then get on the elevator together. However he said he could be factoring in what the Petitioner told him about the juror and State's Attorney getting on the elevator together and maybe he did not see that. Attorney Dakers said he could not recall seeing the juror or State's Attorney talking with each other at any other time. Attorney Dakers stated that the Petitioner asked him about filing a Motion for a New Trial or Mistrial because of jury misconduct CT Page 8887 right after the verdict was rendered. He said he did not file either motion. Attorney Dakers said he was always putting off the Petitioner, but that he did not do right by the Petitioner. He also testified that if he saw a juror and State's Attorney doing something wrong he would have pursued it.
The State's Attorney who tried this case, Mary Ready, testified in this matter. She testified that at the end of the day when the trial was recessing for the day there was a discussion about a juror's problem with child care. She stated the juror indicated to the judge that she had a day care problem the next day. The juror asked the judge what to do and he said she had to solve it and be here the next day. The Judge said there was a day care center next door that attorneys use. After the Judge talked to the juror he asked her (Attorney Ready) "if she knew anything about the day care center next door" and she said "no but she said she heard it had a good reputation and that attorneys from the firm of Wiggin and Dana use it." Attorney Ready testified she did not know where the other jurors were at the time of this discussion. She stated the Petitioner and his attorney were present at the time of the aforementioned discussion. She testified that she never left the courtroom with the juror and never used the same elevator as the juror. She also stated that there was a separate elevator for jurors but she did not know if the jurors had to use it. Attorney Ready testified that she never had any personal conversations with the juror nor did she hand the juror a note. Attorney Ready also testified that she never received any calls from the juror and she was not aware of any calls that came to the State's Attorney's office about a juror being late for court. Attorney Ready testified she never talked to any juror during any case. In this case Attorney Ready testified she only talked to the juror through the trial judge. Further she testified she never offered to help the juror with child care problems and that she never gave the juror her telephone number.
The court finds that the testimony of State's Attorney Mary Ready and Attorney Donald Dakers was credible.
It is well established, however, that not every incident of juror misconduct requires a new trial. See United States v. Klee,494 F.2d 394, 396 (9th Cir.), cert. denied, 419 U.S. 835,95 S.Ct. 62, 42 L.Ed.2d 61 (1974); State v. Asherman, 193 Conn. 695,736 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050,105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). The question is "`whether or not the CT Page 8888 misconduct has prejudiced the defendant to the extent that he has not received a fair trial.'" State v. McCall, supra, 187 Conn. 77, quoting United States v. Klee, supra, 396. The defendant has been prejudiced if "`the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror.'" Williams v. Salamone,192 Conn. 116, 122, 470 A.2d 694 (1984). "We have previously held that, in cases where the trial court is directly implicated in juror misconduct, the state bears the burden of proving that misconduct was harmless error. State v. Castonguay, 194 Conn. 416,435, 481 A.2d 56 (1984); Aillon v. State, [168 Conn. 541,548, 363 A.2d 49 (1975)]." Asherman v. State, 202 Conn. 429, 442,521 A.2d 578 (1987). Where, however, "the trial court was in no way responsible for the juror misconduct . . . we have repeatedly held that a defendant who offers proof of juror misconduct bears the burden of proving that actual prejudice resulted form that misconduct. State v. Castonguay, supra, 435-36 n. 19; State v.Almeda, 189 Conn. 303, 313, 455 A.2d 1326 (1983); see Smith v.Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78
(1982)." Asherman v. State, supra, 442, State v. Newsome,238 Conn. 588, 627 (1996).
After hearing the evidence the court finds that there was no juror misconduct whatsoever in this case.
The Petitioner also claims that the State's Attorney is guilty of misconduct.
In order to deprive a defendant of his constitutional right to a fair trial, however, the prosecutor's conduct must have `so infected the trial with unfairness as to make the resulting, conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Citations omitted; internal quotation marks omitted.) State v. Atkinson,235 Conn. 748, 768-69, 670 A.2d 276 (1996). State v. Garrett,42 Conn. App. 507, 515 (1996). After hearing the evidence in this matter this court finds that there was no misconduct whatsoever on the part of the State's Attorney.
For all of the aforementioned reasons this court denies the Petitioner's Writ for a Petition of Habeas Corpus. CT Page 8889
William J. Sullivan, Judge