[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] SUPPLEMENTAL RULING ON THE DEFENDANT'S MOTION TO CONTACT JURORS
This is an action instituted by the plaintiff, Benjamin Struski, against the defendant, Big Y Foods, Inc., seeking damages against the defendant for injuries and losses he sustained when he slipped on snow-covered steps at the Big Y Foods Supermarket in Plainville, Connecticut. After a jury trial, the jury awarded damages of $176,500 in favor of the plaintiff, which were reduced by 25% based on the jury's finding that the plaintiff committed contributory negligence.
Pending before the court is the defendant's motion to allow its counsel to contact the jurors and for. the disclosure of their addresses and telephone numbers for this purpose. The court on the record granted this motion, but concluded that the contact would proceed with court CT Page 10763 supervision. The defendant was ordered cc submit written questions that it wanted to ask the jurors to allow the plaintiff the opportunity to object to any specific questions and to allow the court to rule on any objections and to otherwise review the propriety of the inquiry.
As part of the plaintiff's response to the questions proposed by the defendant, the plaintiff has requested the court to reconsider its ruling granting the defendant's motion to contact the jurors. The court has reconsidered its order and for the following reasons, the courts decision stands.
Connecticut does not have a statute or practice book rule concerning post-verdict contact of jurors by parties or their counsel. Additionally, there are no officially reported Connecticut cases specifically addressing this subject.
The only Connecticut statute remotely relevant to this issue is General Statutes § 51-232 (c)(e), which states the following in relevant part concerning lawyers use of confidential, juror questionnaires acquired during voir dire:
 ". . . Counsel shall be required to return such copies to the clerk . . . upon completion of the voir dire. Except for disclosure made during voir dire or unless the court orders otherwise information inserted by jurors shall be held in confidence . . . [s]uch . . . questionnaires shall not constitute a public record.
This statute concerning information in jurors' questionnaires only requires counsel to keep this information confidential, and the obvious purpose for this requirement is to preclude the information from becoming available to the general public or third parties. The statute does not describe or circumscribe how counsel themselves may use this information, and the statute certainly does not preclude counsel from using the information to communicate with the jurors when the trial is completed.
The only practice book section concerning communications between attorneys and jurors in civil proceedings is Practice Book § 15-14 which states the following:
 "No party, and no attorney, employee, representative or agent of any party or attorney, shall contact, communicate with or interview any juror or alternate CT Page 10764 juror, or any relative, friend or associate of any juror or alternate juror concerning the deliberations or verdict of the jury or of any individual juror or alternate juror in any action during trial until the jury has returned a verdict and/or the jury has been dismissed by the judicial authority, except upon leave of the judicial authority, which shall be granted only upon the showing of good cause. A violation of this section may be treated as a contempt of court, and may be punished accordingly."
(Emphasis added) Id.; See also, Practice Book § 42-8 (creating an identical rule for criminal proceedings.)
The language of Practice Book § 15-14 is clear that this rule's prohibitions only concern contacts with jurors during a trial. Moreover, the specific qualification that parties and their attorneys may not communicate with jurors "until the jury has returned a verdict and/or the jury has been dismissed by the judicial authority" suggests that such communications are permissible without permission from the court when the trial is over. This qualification becomes even more significant when § 16-14 is compared to the Local District Court Rule 12(e)1, which has very similar language but expressly precludes post-trial, juror contact without judicial authorization.[1]
Historically, Connecticut's ethical rules governing an attorneys conduct precluded an attorney from having post-trial communications with jurors. See Connecticut Bar Association Committee on Professional Ethics, Formal Opinion Number 15 (1967). This position was modified in 1972 when the Judges of the Superior Court adopted Disciplinary Rule 7-108
(D) of the Code of Professional Responsibility (DR7-108 [D]). This disciplinary rule provided the following:
 "After discharge of the jury from further consideration or a case with which the lawyer was connected, the lawyer shall not ask questions of or make comments to a member of that jury that are calculated merely to harass or embarrass the juror or to influence his actions in future jury service."
However, in October 1986, the Disciplinary Rules were replaced by the Rules of Professional Conduct. Disciplinary Rule 7-108 was not adopted as a provision under the new rules. Consequently, there is no provision under the present Rules of Professional Conduct specifically dealing with this issue. CT Page 10765
In a formal opinion issued in 1988, the Bar Association's Committee on Professional Ethics reversed Formal Opinion No. 15 that had precluded an attorney from having post-verdict communications with jurors. See CBA Formal Opinion No. 36 (1988). In, Formal Opinion 36, the ethics committee expressed the view that post-verdict communications between trial counsel and jurors were not only ethical, but necessary for a lawyer to fulfill his obligation to protect the client and to determine whether grounds exist for a new trial. The ethics committee also indicated that it is ethical for lawyers to have informal post-trial discussions with jurors for the purpose of self-education.[2]
The Connecticut case law is well-established about what evidence may be received from a juror at a post-trial evidentiary hearing concerning jury misconduct. The settled rule is that a juror can testify about the fact of improper or extraneous influences, but cannot testify about the jury's mental or deliberative process or how such influences may have affected this process:
 "The court will accept testimony from the jurors as to the facts of extraneous influence but it will not receive evidence as to the effect that this influence may have had on the deliberations or on the mental process of any individual juror or group of jurors. The court feels that it must apply an objective test, assessing for itself, whether or not, there is a likelihood that that influence would affect a jury outcome."
Aillon v. State, 168 Conn. 541, 549, 363 A.2d 49 (1975), quotingState v. Freeman, 5 Conn. 348, 350 (1824).
Consequently, our Supreme Court has expressed its acceptance of a rule "which excludes, as immaterial, evidence as to the expressions and arguments of the jurors in their deliberations and evidence as to their own motives, beliefs, mistakes and mental operations generally, in arriving at their verdict." Id., 550, quoting, McCormick, Evidence (2d Ed.) § 68, p. 148.[3]
In a similar vein, cases hold that motions for hearings to consider evidence about possible juror misconduct are properly denied in the absence of a clear, substantial, non-speculative showing of impropriety. See Baldwin v. Jablecki, 52 Conn. App. 379, 384-85, 726 A.2d 1164
(1999); U.S. v. Abcasis, 811 F. Sup. 828, 835-36 (E.D.N.Y. 1992). CT Page 10766
Although this case law is instructive, it is not on point. The question raised here is not what post-verdict evidence regarding trial improprieties should be received or even whether an evidentiary hearing should be held. The precise questions presented here are whether counsel may engage in post-verdict communications with jurors in order to determine whether there is any admissible evidence to offer, and if so, what preliminary prerequisites must be established before allowing the inquiry and what conditions or limitations should be imposed.
In light of the above considerations, the court's initial ruling granted the plaintiff's motion to contact the jurors and authorized the release of their addresses and telephone numbers for this purpose. As previously stated, there is no statute or practice book rule precluding an attorney from contacting jurors when a trial is over. Indeed, there is no statute or rule even requiring counsel to seek court permission before engaging in such contacts. Thus, in granting the defendant's motion, this court reasoned that it would be incongruous to deny the motion to contact the jurors under circumstances where a motion for this purpose is not required, and when the relief requested is not legally precluded under Connecticut statutory or case law. The court further reasoned, however, that since court authority was sought, the inquiry should proceed with court supervision to decrease the potential for abuse.
It is this potential for abuse that gives this court pause and has prompted the court's reconsideration of its initial ruling. The defendant has not based its request to interview the jurors on any claim of actual juror misconduct. The jury deliberated for less than an hour, and because of this short deliberation, the defendant opines that the jurors may have begun deliberating before they were instructed to do so or that they may have inappropriately rushed to a verdict without full consideration of the issues. The court is satisfied that the issues raised by the trial could be fairly addressed and resolved within the time taken by the jurors to deliberate, and furthermore, the established law is that misconduct rarely can be inferred from the duration of a jury's deliberation. See Baldwin v. Jablecki, supra, 52 Conn. App. 384 ("A short deliberation, rather than being indicative of a lack of diligence, may in fact attest to the strength of the [prevailing party's] case"). Thus, the court is inclined to agree with the plaintiff that the defendant's request to contact the jurors based on this record represents, to a significant extent, a fishing expedition.
Giving disgruntled, losing litigants and their attorneys unfettered access to jurors certainly raises significant concerns. A bedrock of our CT Page 10767 judicial system is a person's qualified right to have a trial by a jury of his or her peers, and consequently, the maintenance and protection of the jury process are very important matters. Many of the concerns relating to the admission of juror testimony at hearings investigating juror misconduct are also implicated by post-trial questioning of jurors. These include the need to decrease potential sources of jury tampering and to increase the certainty and finality of a verdict, and the need to discourage disappointed litigants from harassing jurors or filing meritless post-trial motions. Additionally, there is a need to prevent conduct that may discourage jury service or inhibit jury deliberations in future cases. United States v. Abcasis, supra,811 F. Sup. 836; see generally, Allion v. State, supra, 168 Conn. 449-550.
These concerns have led other jurisdictions to adopt rules requiring a party to acquire court approval before having post-trial communications with jurors and requiring the movant to show good cause for such contacts in order to acquire court approval. See, e.g., Economou v. Little,850 F. Sup. 849, 852-853 (N.D.Cal. 1994) ("Most federal courts deny requests to conduct post-verdict interviews of jurors unless there is a proper preliminary showing of likely jury misconduct or witness incompetency" ); Stelma v. Juguilon, 597 N.E.2d 523, 527 (Ohio App. 1992) (denying defendant's motion for post-trial interviews of jurors because the defendant failed to show good cause for such interviews) see generally, 19 ALR 4th 1209.[4]
Although there are no reported Connecticut cases on this subject, the court has located unreported decisions by Judge Freedman on these issues. See State v. Tomasko, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. (May 31, 1996, Freedman, J.)); Statev. Newsome, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 75659 (March 11, 1994). In Tomasko and Newsome,
the court was presented with challenges to criminal convictions based on post-trial, juror interviews conducted by private investigators retained by the defendants without court approval. Judge Freedman concluded that such investigations presented a "potential incursion which may damage the basic foundation of the jury system — the secrecy of deliberations". State v. Tomasko, supra. Judge Freedman viewed such interviews as a violation of General Statutes § 51-232 (c) and decided that the rule established by the Second Circuit Court of Appeals should be adopted barring such interviews unless a showing of good cause is made and court approval is obtained.
This court shares the concerns expressed in Newsome and Tomasko, but for the following reasons is reluctant to follow the holdings of these CT Page 10768 cases. As previously explained, the express language and purpose of General Statutes § 51-232 require the parties to keep the information in juror questionnaires confidential. General Statutes § 51-232, however, does not circumscribe an attorney's use of this information or preclude post-trial communications with jurors as long as this confidentiality is maintained.
This court agrees with Judge Freedman's view that this matter may deserve a legislative or practice book rule specifically addressing post-trial juror contact, but no such rule exists. The trial court should be hesitant to adopt a federal rule changing existing Connecticut law when neither the legislature nor the judicial rules committee has acted, and when the Connecticut Supreme Court has not exercised its discretionary authority in this field, especially in light or the tacit acceptance of the present status of the law as evidenced by the legislative inaction since the Newsome and Tomasko decisions.[5]
In summary, although an attorney is not required to acquire court permission to have post-verdict communications with jurors, counsel proceeds at his peril. Questions by parties or their attorneys that invade the secrecy of juror deliberations or probe into the jury's deliberative processes are inappropriate at post-trial hearings on juror misconduct, and appear similarly inappropriate during post-trial, juror interviews. See generally, Aillon v. State, supra, 168 Conn. 549. Additionally, an attorney's contact with jurors that is abusive or harassing in any way would violate ethical rules of conduct and would expose the attorney to unhesitating sanction by the court.
The perils associated with attorneys interviewing jurors about their verdict are exemplified by the questions proposed by the defendant in this case. For example, many of the proposed questions ask whether the jurors during their deliberations "discussed" specifically identified items, such as extraneous information not presented as evidence, which they were instructed could not be relied on in reaching their decision. It becomes immediately apparent that such questioning comes perilously close to invading the jury's deliberative processes because the jurors may very well have reviewed the court's instructions about what is and what is not proper evidence and appropriately "discussed" how various items could not be considered or relied on by them in resolving the factual disputes.
On the basis of the issues raised here, the questions that have been proposed and the objections that have been asserted, the court authorizes the defendant's counsel to interview the jurors based on the prefatory CT Page 10769 statement and the questions set out in the Appendix. The defendant's attorney also seeks to ask the jurors questions about his trial performance for educational purposes. Such questions may also be asked and are not addressed in the Appendix.
The court has granted the defendant's "motion for extension of time to modify its motion for judgment notwithstanding the verdict, or in the alternative, to set aside verdict, for remittitur, and for a new trial," and the court further orders that any further post-trial motions shall be filed within twelve days from the date of this decision.
So ordered August 11, 2000.
STEVENS, J.